**In re D.S. and M.S., Minor Children, Appeal of D.B., Grandmother.**

Superior Court of Pennsylvania.

Argued June 10, 2009.
Filed July 23, 2009.

Neil M. Krum, Philadelphia, for appellant.

Michael E. Angelotti, Philadelphia, for Dept. of Human Services, Participating Party.

BEFORE: STEVENS, KLEIN, and KELLY, JJ.

OPINION BY STEVENS, J.:

¶ 1 D.B. ("Grandmother") appeals from the August 27, 2008 order entered in the Court of Common Pleas of Philadelphia County concluding that Grandmother did not have standing to participate in the dependency proceedings and vacating the appointment of Grandmother's counsel. We affirm.

¶ 2 D.S. (d.o.b. 6/23/99) and M.S. (d.o.b. 7/15/04) ("Children") were residing with their mother ("Mother") in Washoe County, Nevada, when the Nevada trial court adjudicated them dependent on October 31, 2005. The Washoe County Department of Social Services ("WCDSS") worked with the Children's parents to meet their Family Service Plan ("FSP") objectives, but both parents failed to substantially comply with them. WCDSS concurrently filed an Interstate Compact for the Placement of Children ("ICPC") in order for the Children to be placed with their Grandmother who resided in Philadelphia, Pennsylvania. The ICPC was approved on August 16, 2006, and the Children were placed with Grandmother. The Philadelphia Department of Human Services ("DHS") agreed to accept the Children and filed a dependency petition on August 13, 2007. Trial Court Opinion, 1/7/09, at 2.

¶ 3 Based on their parents' inability to care for them, the trial court adjudicated the Children dependent on August 14, 2007, and committed them to the supervision of DHS. The trial court ruled that the Children should remain with their Grandmother and Step–Grandfather. However, in the fall of 2007, during the course of their investigation to qualify Grandmother as a foster parent, DHS discovered that Step–Grandfather had a twelve-year-old conviction for aggravated assault. DHS then disqualified Grandmother as a foster parent pursuant to the Children's Protective Services Law ("CPSL"), which indicates that a home cannot be approved as a foster home, if a household member of the foster home has a criminal conviction for certain specific offenses, including aggravated assault. *See* 23 Pa.C.S.A. § 6344; Trial Court Opinion, 1/7/09, at 2.

¶ 4 Following DHS's disqualification of Grandmother as a foster parent for the

Children, DHS removed the Children from Grandmother's home and placed them in another foster home. On December 10, 2007, the trial court appointed counsel for Grandmother and ordered that the Children remain in the foster home to which they had been transferred. In addition, the trial court granted Grandmother weekly unsupervised visits with the Children on the condition that Step–Grandfather would not have any contact with them. The Children were subsequently moved to the home of a maternal cousin. Trial Court Opinion, 1/7/09, at 3.

¶ 5 At a hearing on May 5, 2008, Grandmother raised the issue of whether she had standing to participate in the dependency hearings. N.T., 5/5/08, at 33–35. At that time, the trial court requested that the parties file briefs concerning the issue of standing. On August 27, 2008, the trial court issued an order finding that Grandmother did not have standing to participate in the dependency proceedings and vacated the appointment of Grandmother's counsel. Trial Court Opinion, 1/7/09, at 3.

¶ 6 On September 15, 2008, Grandmother filed a motion to reconsider the trial court's denial of standing, and, on the same date, the trial court denied Grandmother's motion for reconsideration. At that time, Grandmother also requested a stay of the denial of court-appointed counsel for the purpose of filing an appeal, and the trial court denied the request. The trial court docketed Grandmother's timely notice of appeal on August 28, 2008, but did not enter it until September 22, 2008. On September 17, 2008, the trial court directed Grandmother to file a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P.1925(b), and Grandmother timely complied on October

8, 2008. The trial court filed a responsive Pa.R.A.P.1925(a) opinion.[1]

 ¶ 7 Initially, we note that the standard of review which this Court employs in cases of dependency is as follows:

We must accept the facts as found by the trial court unless they are not supported by the record. Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in viewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate. We review for abuse of discretion.

*In re F.B.*, 927 A.2d 268, 272 (Pa.Super.2007) (quotation omitted).

¶ 8 In her brief on appeal, Grandmother raises the following five issues:

1. Did the court below err in ruling that grandmother, D.B., has no standing?

2. Did the court err below in failing to consider grandmother, D.B., as a placement resource, due to unconstitutionally overbroad application of 23 Pa.C.S. § 6344?

3. Did the court below err in failing to consider Appellant's Motion for Reconsideration?

4. Did the court below err in depriving Appellant of her rights to counsel, which are guaranteed by the Constitutions of Pennsylvania and the United States, and by the Juvenile Act?

5. If allowed to stand, would the errors committed by the lower court deprive Appellant of her rights to Due

1. We note that, on September 19, 2008, Grandmother filed a petition to modify the custody order with regard to the Children.

Since an appeal to this Court was pending, the trial court dismissed Grandmother's custody petition on October 1, 2008.

Process and Equal Protection under the law?

Appellant's brief at 4.

■ ¶ 9 Grandmother first argues that the trial court erred in holding that she did not have standing to participate in the dependency proceedings concerning the Children. Citing to *R.M. v. Baxter*, 565 Pa. 619, 777 A.2d 446 (2001), Grandmother contends that the Pennsylvania Supreme Court has determined that 23 Pa.C.S.A. § 5313 confers standing upon a grandparent to file a complaint for custody and/or visitation of a grandchild after the child has been declared dependent and that the standing applies to the dependency proceedings also.

¶ 10 The trial court found that Grandmother's arguments with regard to her standing in the dependency case of the Children based on 23 Pa.C.S.A. § 5313 and *R.M., supra*, are misplaced in this case. The trial court noted that, although the Supreme Court and the legislature granted grandparents in both instances standing to file a petition for custody, they did not grant grandparents standing to participate in dependency proceedings before the trial court grants the petition for custody.

¶ 11 According to the record in this case, Grandmother did not file a petition for custody until September 19, 2008. The trial court held that, since Grandmother's appeal filed on September 22, 2008 divested the court of jurisdiction to consider the merits of the petition for custody, it had no recourse but to dismiss the custody petition on October 1, 2008. Pa.R.A.P. 1701(a).

¶ 12 The trial court found the facts and the holding in *In re L.C., II*, 900 A.2d 378, 381 (Pa.Super.2006), to be directly on point with the instant case. In *In re L.C. II*, as in this case, a grandmother appealed from a court order denying her standing to participate in the proceeding at which her grandson was adjudicated dependent. The child had lived with his grandmother for fourteen years, and the trial court then awarded legal and physical custody to his mother. Seventeen months later, the child was adjudicated dependent and placed under the supervision of Indiana County Children and Youth agency. The grandmother sought standing to participate in the child's dependency hearing, and the trial court denied the grandmother's petition. The grandmother appealed, citing *R.M., supra*, (granting standing to grandmother seeking custody of her grandchild who had been declared dependent), and *In re Adoption of Hess*, 530 Pa. 218, 608 A.2d 10 (1992) (granting grandparents' petition to intervene in the proceedings for their grandchildren after the parental rights of the natural parents had been terminated).

¶ 13 This Court found the cases cited by the grandmother in *In re L.C., II*, to be inapposite since they concerned custody actions, not adjudications of dependency. *Id.* at 380. The Court noted that, under the Juvenile Act, attendance at and participation in dependency proceedings are restricted, and that dependency proceedings are closed to the general public. *Id.* at 381; *In re L.J.*, 456 Pa.Super. 685, 691 A.2d 520, 526 (1997); 42 Pa.C.S.A. § 6336(d). This Court also found that only a "party" has "the right to participate, to be heard on his or her behalf, to introduce evidence, and/or to cross-examine witnesses." *In re L.C., II*, 900 A.2d at 381.

¶ 14 In *In re L.C., II*, this Court clearly determined that only three classes of individuals may qualify for legal party standing in dependency proceedings: (1) the parents of the juvenile whose dependency status is at issue, (2) the legal custodian of the juvenile whose dependency status is at issue, and (3) the person whose care and control of the juvenile is at question at the

time of the adjudicatory hearing. *Id.* at 381. *See In re F.B.,* 927 A.2d 268 (Pa.Super.2007); *In re J.P.,* 832 A.2d 492, 496 (Pa.Super.2003). The Court opined that the categories "logically stem from the fact that, upon adjudication of dependency, the court has the authority to remove a child from the custody of his or her parents or legal custodian." *In re L. C., II,* 900 A.2d at 381. *See* 42 Pa.C.S.A. § 6351. Moreover, Section 6336.1 of the Juvenile Act, added via amendment effective on January 1, 1999, further indicates that standing in dependency matters is restrictive. In order to achieve statutory standing under Section 6336.1, a foster parent, pre-adoptive parent or relative providing care must have legal custody of the child. *In re L.C., II,* 900 A.2d at 382. In *In re L.C., II,* this Court found the statutory provision to be "*silent* regarding either the right to be heard or statutory standing for grandparents or relatives who *at some time in the past* served as a primary caregiver for the child." *Id.* at 382 (emphasis in original).

¶ 15 Finally, the Court in *In re L.C., II,* stated that its conclusion in the case did not mean that the grandmother would lack standing to seek custody of her grandson. Rather, the Court found that, although the trial court allowed grandmother to be present at the hearing, it properly denied the grandmother standing to participate as a party in the grandson's dependency hearing, and the trial court appropriately deferred further custody and family placement decision to another day. *Id.* at 382–83.

¶ 16 Thus, after a review of the record in the instant case and the applicable case law, we find that the trial court did not err in ruling that Grandmother did not have standing in the dependency proceeding. The trial court noted that, when the trial court in Washoe County, Nevada, adjudicated the Children dependent, it did so because Mother, and not Grandmother, was unable to care for the Children. The court also noted that Grandmother's role was not as the caretaker of the Children, but as a placement resource after the adjudication of dependency. Thus, the trial court found that Grandmother did not fall into any of the categories which would grant her status as a party in a dependency hearing. Her care and control of the Children were not at issue in this case. Grandmother did not have legal custody of the Children. Finally, Grandmother did not have any standing in the dependency proceedings by virtue of her status as a grandparent. Therefore, we find that the trial court did not err in finding that Grandmother did not have standing to participate in the dependency proceedings. *See* Trial Court Opinion, 1/7/09. The trial court never held that Grandmother lacked standing to seek custody of the Children. Rather, as in *In re L.C., II,* the trial court properly deferred further custody and family placement decisions to another day.

¶ 17 Grandmother next contends that the trial court erred in holding that, pursuant to 23 Pa.C.S.A. § 6344, Grandmother was disqualified as a foster parent and a placement resource for the Children. Grandmother argues that "the trial court gave no consideration to how remote in time was [Step-grandfather's] conviction, nor to how remote it was from impacting on the question of or capacity to care for children." Grandmother's brief at 19. We disagree.

¶ 18 We agree with the trial court that Grandmother did not appeal the removal of the Children from her home in a timely manner, and, thus waived her right to do so at this time. First, the trial court found, after DHS disqualified Grandmother as a kinship provider, she could have pursued administrative remedies and appealed the disqualification pursuant to 55

Pa.Code § 3700.72. The record shows that Grandmother did not do so. Trial Court Opinion, 1/7/09, at 5.

¶ 19 In addition, Grandmother did not appeal the trial court's decision of December 7, 2007, which affirmed the removal of the Children from Grandmother's home. Rather, Grandmother waited until September 22, 2008 to appeal the decision. Pa. R.A.P. 903(a) (appeal must filed within 30 days after entry of the order from which the appeal is taken).

■ ¶ 20 However, in the alternative we find that the trial court properly considered Grandmother as a placement source but found that since Step–Grandfather had been convicted of aggravated assault twelve years before, Grandmother's home could not qualify as a foster home. The trial court held that 23 Pa.C.S.A. § 6344 prohibits the authorization, without exception, of a person as a foster parent, if a person living in a prospective foster parent's home has a criminal conviction for aggravated assault. We find, as does the trial court, that the statute does not provide any time limitation in its application, as Grandmother suggests.

¶ 21 In her appeal, Grandmother cites the Commonwealth Court's decision in *Warren County Human Services v. State Civil Service Commission,* 844 A.2d 70 (Pa.Cmwlth.2004)[2] for the proposition the trial court's application of 23 Pa.C.S.A. § 6344 was overbroad. In *Warren County Human Services,* the appellant worked for the children and youth agency serving Forrest and Warren counties, having passed criminal background checks. However, the appellant was forced to reapply for his job due to reorganization and did not qualify for his job based on his criminal history based on a new version of section 6344. The Commonwealth Court held that section 6344 violated Article 1 of the Pennsylvania Constitution. *Warren County Human Services,* 844 A.2d at 71–72. The Pennsylvania Supreme Court has consistently interpreted Article 1, Section 1 to guarantee an individual's right to a livelihood and income from that livelihood. *Id.* at 74.

¶ 22 The trial court found *Warren County Human Services* distinguishable from the current case. After careful analysis, the trial court found a significant difference between a job of a caseworker and role of a foster parent. For example, a caseworker depends on the job for his livelihood and income, and, as a requirement of the job, visits the child on occasion, but is not responsible on a daily basis for the care and security of the child. On the other hand, the trial court determined that a foster parent has that responsibility, and, thus, a lifetime ban is rationally related to the legitimate state interest in protecting children. Trial Court Opinion, 1/7/09, at 5. Grandmother's role as a foster parent would not be to earn a living or to make a profit, but rather to provide for the care, maintenance, and emotional well-being of the Children. Thus, we find no error on the part of the trial court.

¶ 23 Grandmother also argues that the trial court erred in failing to consider her motion for reconsideration. In our review of the record, we find no evidence that the trial court did not adequately review and consider Grandmother's motion for reconsideration.

■ ¶ 24 In her next issue, Grandmother, contends that she was deprived of her right to counsel guaranteed by the Constitutions of the United States and Pennsylvania, and by the Juvenile Act. We find

---

**2.** We note that Commonwealth Court cases are not binding on this Court. *Stackhouse v.* *Stackhouse,* 862 A.2d 102, 105 (Pa.Super.2004).

that, although the trial court appointed counsel for Grandmother to litigate the issue of whether she had standing, the trial court properly vacated the appointment when it held that Grandmother lacked standing. Grandmother was never found to be a "party" to the dependency proceedings and, therefore, was never entitled to court-appointed counsel. The Juvenile Act provides that "a party is entitled to representation by legal counsel at all stages of any proceedings .... and if he is without financial resources unable to employ counsel or to have counsel provided for him." 42 Pa.C.S.A. § 6337. We agree with the trial court that Grandmother never met the requirement of a "party" and is not entitled to counsel. Trial Court Opinion, 1/7/09, at 8.

¶ 25 Finally, Grandmother argues that the trial court deprived her of her rights to Due Process and Equal Protection under the Law. The trial court found Grandmother's arguments vague and unanswerable and, therefore, waived. We agree with the trial court and find that any argument presented in this section is repetitious of argument previously made and issues previous discussed in this case. However, we do note that, despite not being a party to the dependency proceeding, the trial court did provide Grandmother with both notice concerning the hearings in the case and an opportunity to be heard, including the assistance of a court-appointed attorney. *See In re F.B., supra.* Thus, we find no error on the part of the trial court.

¶ 26 Because the trial court's findings and conclusions concerning Grandmother's lack of standing are amply supported by our review of the record and established law, we affirm the order denying Grandmother standing to participate in the dependency proceedings and vacating the appointment of Grandmother's counsel.

¶ 27 Order affirmed.

¶ 28 KLEIN, J. FILES A CONCURRING STATEMENT IN WHICH JUDGE KELLY ALSO JOINS.

## CONCURRING STATEMENT BY KLEIN, J.:

¶ 1 I fully join in the cogent analysis of my esteemed colleague. I write separately only to note that I believe it was error for the trial court to dismiss Grandmother's *custody* petition because the *dependency* matter was pending. As the majority fully and thoroughly points out in its opinion, there are significant differences between a grandparent who is merely a placement as a foster parent and a grandparent seeking custody. As noted by Judge Stevens:

> The trial court found that Grandmother's arguments with regard to her standing in the dependency case of the Children based on 23 Pa.C.S.A. § 5313 and *R.M., supra,* are misplaced in this case. The trial court noted that, although the Supreme Court and the legislature granted grandparents in both instances standing to file a petition for custody, they did not grant grandparents standing to participate in dependency proceedings before the trial court grants the petition for custody.

Majority Opinion, at 904.

¶ 2 The prime reason why Grandmother was denied standing to participate in the dependency proceeding is because it is a very different procedure from a custody hearing. Therefore, the appeal of the dependency petition should have no effect on the custody petition and that should have been heard.

¶ 3 There are practical reasons for this as well. First, it is vitally important for children to have certainty in their placements, and if ultimately the Grandmother obtains custody, as she well might, there

will have been a long delay while the child is in a placement with different foster parents. Secondly, it is understandable that with the crush of the volume of dependency matters, it is necessary for the Department of Human Services to have firm rules to provide placement and further to avoid being hampered by extensive litigation. At the same time, the Court has more flexibility when determining permanent custody. I do not question a *rule* that prohibits *dependency* placement when a member of the household has certain criminal convictions. However, in a custody matter when there is time to fully consider all factors, such as this case, the court may well find that despite the foster step-grandfather's twelve-year-old conviction for aggravated assault, that placement may be optimum for the grandchildren.

¶ 4 While I fully agree with Judge Stevens, I urge the immediate reactivation of the custody matter.