**In re D.M., a Minor.**

**Appeal of S.M., Natural Mother, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 10, 2009.
Filed May 14, 2010.

Sharon M. Biasca, Pittsburgh, for appellant.

Mark B. Greenblatt, Pittsburgh, for appellee.

BEFORE: FORD ELLIOTT, P.J., SHOGAN, J., and McEWEN, P.J.E.

OPINION BY FORD ELLIOTT, P.J.:

¶ 1 On March 5, 2009,[1] the Court of Common Pleas of Allegheny County denied appellant, S.M., standing in a dependency disposition hearing at which a minor male child, D.M. ("Child"), was adjudicated dependent pursuant to 42 Pa.C.S.A. § 6302.[2] Also as a part of the dispositional order, the judge ordered S.M. to comply with the Allegheny County Office of Children Youth and Families ("CYF"), obtain a drug and alcohol evaluation, and provide clean and random urine screens. S.M.'s supervised visits with Child were to remain status quo. Herein, S.M. timely appeals, asserting that, although her parental rights were previously terminated with regard to Child, she should have standing in this dependency matter as she is Child's natural mother, Child was placed in her care and control after the termination of her parental rights, and the trial court's order on appeal exercised control over her. Following careful review, we affirm.[3]

¶ 2 The facts of this matter are unique; thus, a thorough recitation of this case follows. S.M. is actually the biological mother of Child who was born on April 27, 1995. Child was initially determined to be dependent, by stipulation, on March 31, 1997, when Child was discovered to have been left home alone by S.M. S.M.'s parental rights to Child were terminated in 2001, and Child was adopted by T.W. and V.W. (hereinafter "Adoptive Father" and "Adoptive Mother").

---

1. Upon motion of S.M., the trial court issued an order on April 9, 2009, which corrected its order of March 5, 2009 to reflect that S.M. was denied standing on that date.

2. Section 6302 of the Juvenile Act defines a "dependent child" as [a] child who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S.A. § 6302.

3. On September 1, 2009, counsel for S.M. on appeal, Sharon M. Biasca, Esq., filed with this court a motion for leave to withdraw as counsel because she was no longer to be employed by the Allegheny County Bar Foundation Juvenile Court Project ("the Project") after September 4, 2009, and new counsel from the Project filed his praecipe for appearance as substitute counsel. This court hereby grants Attorney Biasca's motion.

¶ 3 Adoptive Mother died on March 16, 2006. Sometime thereafter, Adoptive Father gave physical custody of Child to S.M. as he suffered from medical problems and believed he was incapable of caring for Child. In May of 2008, the case was referred to CYF as it was reported that S.M. had been incarcerated and Child was without proper parental care and control and had not been attending school.

¶ 4 An emergency custody order ("ECO") was signed on May 27, 2008. CYF filed a dependency petition on June 4, 2008, and a hearing was held on July 9, 2008. At the July 9, 2008 dependency hearing, the trial court found Child dependent due to lack of parental control as Adoptive Father had significant medical issues that rendered him unable to parent Child and because Adoptive Mother was deceased.[4] The trial court ordered CYF to place Child with S.M., with in-home services to continue for both Child and S.M. Child was to attend school, and S.M. was to comply with CYF and in-home services and participate in drug and alcohol treatment.

¶ 5 At some point thereafter, the police responded to a domestic fight between S.M. and her sister. S.M. was arrested for simple assault and incarcerated. On October 2, 2008, the trial court signed an ECO, and Child was taken into protective custody. Following a shelter hearing on October 3, 2008, the court placed Child back with Adoptive Father. CYF, however, was permitted to schedule visits for Child with S.M. at the Allegheny County Jail.

¶ 6 A review hearing was held on December 3, 2008 wherein the court found Child was no longer dependent. Child was re-united with Adoptive Father, and the case was listed as closed. The court advised S.M. that any custody or visitation with Child would need to be arranged with Adoptive Father as the court no longer had jurisdiction. (Notes of testimony, 12/3/08 at 9, 10–11.)

¶ 7 Several weeks later, on December 19, 2008, a shelter hearing was brought before a hearing officer, and Adoptive Father advised CYF that he could not care for Child. Pursuant to a December 19, 2008 shelter order, the trial court placed Child with Adoptive Mother's brother S.J. ("Maternal Uncle"), pursuant to CYF's proposal. S.M. was permitted to have supervised visits with Child in Maternal Uncle's home. CYF was ordered to file a petition within 30 days.

¶ 8 A dependency hearing was held January 7, 2009 wherein the court heard *in camera* testimony from Child, now 13 years old, along with testimony from S.M. and the CYF caseworker. S.M. presented argument as to why she should be granted standing. (Notes of testimony, 1/7/09 at 4, 24–26.) The matter was taken under advisement and continued. In the interim, Child was ordered to remain in foster care with Maternal Uncle. S.M. was permitted one overnight visit a week with Child and was ordered to cooperate with CYF, complete a drug and alcohol evaluation, and submit to random drug screens. The court also stated that upon agreement of the Guardian *ad litem* ("the GAL") and CYF, physical custody of Child could be returned to S.M.

4.  S.M. takes issue with the trial court's statement that, at the time of the first dependency petition, she did not file a petition to intervene or assert *in loco parentis* status. (Trial court opinion, 5/4/09 at 6.) Our review of the July 9, 2008 hearing reveals that while S.M.'s attorney made an argument at hearing regarding S.M.'s *in loco parentis* status, the court did not specifically make a specific finding as to her status. Rather, the court permitted S.M.'s attorney to enter his appearance based on counsel's representations that Child had been residing with S.M. (Notes of testimony, 7/9/08 at 6.)

¶ 9 On February 4, 2009, however, the GAL filed an emergency motion to suspend unsupervised visitations with S.M. The GAL alleged that S.M. refused to take random urine screens, and the GAL expressed concern as to Child's safety while in S.M.'s care. The motion was granted and unsupervised visits with S.M. were suspended until S.M. became compliant with CYF. S.M. was ordered to provide clean, random urine screens and the results of a drug and alcohol evaluation.

¶ 10 Also on February 4, 2009, CYF filed an amended petition for dependency. A hearing was held on March 4, 2009.[5] S.M. was denied standing. (Notes of testimony, 3/4/09 at 5, 7.) The trial court determined that Child was dependent pursuant to 42 Pa.C.S.A. § 6302(1) as Adoptive Father was unable to care for or control Child and Adoptive Mother was deceased. (*Id.* at 6, 9.) Child was to remain in his current foster home with Maternal Uncle. S.M.'s visits with Child were to remain status quo. S.M. was ordered to comply with CYF, obtain a drug and alcohol evaluation, and provide clean and random urine screens.

¶ 11 On April 2, 2009, S.M. simultaneously filed a timely notice of appeal from the March 5, 2009 order, along with a concise statement of errors complained of

on appeal. On appeal, S.M. raises the following issue:

> Should a biological mother whose parental rights have been terminated be granted standing in a subsequent dependency matter where the allegations concern her present care of the child and the trial court compels her to cooperate with the county agency, provide a drug and alcohol evaluation and submit to random urine screens?

S.M.'s brief at 7.[6]

¶ 12 We first address our appellate jurisdiction. In S.M.'s statement of jurisdiction, she contends this court has jurisdiction to review the order denying standing under the collateral order doctrine. Without addressing the applicability of the collateral order doctrine, we will assume appellate jurisdiction here as we did in *In re J.P.*, 832 A.2d 492, 495 (Pa.Super.2003), to review the denial of a father's standing in a dependency proceeding. *See also In re D.K.*, 922 A.2d 929 (Pa.Super.2007) (exercising jurisdiction to review similar order denying standing in a dependency proceeding).

■ ¶ 13 S.M. contends that the trial court erred and abused its discretion in denying her standing to participate in the dependency action.[7] S.M. raises a ques-

---

**5.** S.M. asserts that she requested a copy of the notes of testimony from the February 4, 2009 hearing at the time the notice of appeal was filed, and was later notified by the Allegheny County Court Reporter's Office that the hearing was not recorded. (S.M.'s brief at 16, n.6.)

**6.** We note that the issue raised in S.M.'s brief is not identical to the issue raised in S.M.'s Rule 1925(b) statement. We, nevertheless, find the issue preserved for our review.

**7.** S.M. concedes that Section 6336.1 of the Juvenile Act does not apply to her. Section 6336.1 recognizes standing for the child's foster parent, pre-adoptive parent, or relative

providing care for a child, where that individual has been afforded legal custody pursuant to 42 Pa.C.S.A. § 6357 (relating to rights and duties of the legal guardian), by affording those persons notice and the right to be heard at any hearing under Chapter 63 of the Juvenile Act. *See* 42 Pa.C.S.A. § 6336.1. Section 6336.1 of the Juvenile Act indicates that standing in a dependency matter is restricted.

> **§ 6336.1. Notice and hearing**
> The court shall direct the county agency or juvenile probation department to provide the child's foster parent, preadoptive parent or relative providing care for the child with timely notice of the hearing. The court shall provide the child's foster parent, pre-

tion of law; thus, our scope of review is plenary and our standard of review is *de novo. In re L.C., II,* 900 A.2d 378, 380–381 (Pa.Super.2006) (issue regarding standing to participate in dependency proceeding is a question of law warranting plenary review).

¶ 14 Under the Juvenile Act, attendance at and participation in dependency proceedings are restricted. The Juvenile Act mandates that "the general public shall be excluded from hearings...." 42 Pa.C.S.A. § 6336(d). *See also In re L.J.,* 456 Pa.Super. 685, 691 A.2d 520, 526 (1997), *appeal denied,* 548 Pa. 681, 699 A.2d 735 (1997). As the Juvenile Act entitles only the "parties" in dependency hearings the right to participate, to be heard on his or her own behalf, to introduce evidence, and to cross-examine witnesses, a person who is not a "party" to a proceeding has no right to participate in the hearing. 42 Pa.C.S.A. § 6338(a); *In re L.J.,* 691 A.2d at 526 (stating that a person who is not a party has no right to participate in a dependency proceeding).

¶ 15 The term "party" is not defined in the Act. This court, however, has conferred the status of "party" in a juvenile proceeding on three classes of persons: (1) the parents of the juvenile whose dependency status is at issue; (2) the legal custodian of the juvenile whose dependency status is at issue; or (3) the person whose care and control of the juvenile is in question. *In re D.S.,* 979 A.2d 901, 904–905 (Pa.Super.2009), citing *In re L.C., II,* 900 A.2d at 381. *See also In re J.P.,* 832 A.2d at 496; *In re L.J.,* 691 A.2d at 526; *In re Manuel,* 389 Pa.Super. 80, 566 A.2d 626, 628 (1989); *In re Michael Y.,* 365 Pa.Super. 488, 530 A.2d 115, 118 (1987).

These categories logically stem from the fact that upon an adjudication of dependency, the court has the authority to remove a child from the custody of his or her parents or legal custodian. 42 Pa.C.S.A. § 6351. Due process requires that the child's legal caregiver, be it a parent or other custodian, be granted party status in order to be able to participate and present argument in the dependency proceedings. *See Brooks-Gall v. Gall,* 840 A.2d 993, 997–98 (Pa.Super.2003).

*In re L.C., II,* 900 A.2d at 381. We find that S.M. does not fall within the three classes of persons Pennsylvania jurisprudence recognizes as a party in dependency proceedings.

¶ 16 First, while S.M. is the biological mother of Child, she is not the legal parent of the juvenile whose dependency status is at issue. S.M.'s parental rights to Child were terminated in 2001. We have explained that upon relinquishing parental rights to a child, that person renders himself a third party to the child. *See McNamara v. Thomas,* 741 A.2d 778, 781 (Pa.Super.1999) (parent whose parental rights have been terminated is third party when seeking visitation rights). Nor does S.M. have standing as the legal custodian of Child. Instantly, there is no court order awarding legal custody of Child to S.M. at any point after the termination of her parental rights.[8] At the time the dependen-

adoptive parent or relative providing care for the child opportunity to be heard at any hearing under [the Juvenile Act]. Unless a foster parent, preadoptive parent or relative providing care for a child has been awarded legal custody pursuant to section 6357 (relating to rights and duties of legal custodian), nothing in this section shall give the

foster parent, preadoptive parent or relative providing care for the child legal standing in the matter being heard by the court. 42 Pa.C.S.A. § 6336.1(a).

8. On March 4, 2009, S.M. introduced into evidence a notarized agreement she and Adoptive Father signed in August 2006 allegedly giving S.M. custody. While this agree-

cy petition was filed, Adoptive Father had legal custody of Child pursuant to the trial court's December 3, 2008 order.

> To achieve statutory standing under this section, a foster parent, preadoptive parent or relative providing care must have legal custody of the child, consistent with *J.P., supra; L.J., supra;* and *Michael Y., supra. This statutory provision* is silent regarding either the right to be heard or statutory standing for grandparents or relatives *who at some time in the past* served as primary caregiver for the child.

*In re L.C., II,* 900 A.2d at 382 (emphasis in original).

¶ 17 Regarding the third category, we also find that S.M.'s care and control of Child was not in question. Rather, it was Adoptive Father's care and control of Child which the court looked into for the determination of dependency. To support her contention that she did have standing at Child's dependency hearing, S.M. argues to the contrary, claiming that *both* Adoptive Father's and her care and control were at issue. (S.M.'s brief at 24.) S.M. claims that this is evidenced by the dependency petition itself, as well as the number of times she is mentioned in the notes of testimony at the hearings on July 9, 2008, January 7, 2009, and March 4, 2009. (*Id.* at 24, 32.) We disagree.

¶ 18 First, a review of the dependency petitions filed indicates that the references concerning S.M. are in relation to the history of Child and his former placements. (*See* petition for dependency, 12/22/08.) We also note that S.M. is not named in the affidavit of service. (*Id.*) Additionally,

when reviewing the notes of testimony referred to by S.M. regarding the January 7, 2009 and March 4, 2009 hearings, we note she was only mentioned prior to this point in the proceedings to assess whether she had standing. At this stage of the hearing, testimony about S.M. was heard when the GAL asked the CYF caseworker if there were any other possible placement resources for Child, and the caseworker responded that S.M. was a potential resource. Much of the testimony concerns whether visits between S.M. and Child were appropriate or should be supervised. (*See* notes of testimony, 1/7/09 at 16–18, 19–23; 3/4/09 at 14–22, 29–36, 46–48.) Thus, the majority of the testimony S.M. refers us to in support of her argument was taken to assess her future fitness as a placement resource. The July 9, 2008 hearing was in relation to a prior dependency matter wherein Child was subsequently found not to be dependent and returned to Adoptive Father; thereafter, the case was listed as closed.

¶ 19 At the March 4, 2009 hearing, the trial court adjudicated Child dependent based solely on the finding that Adoptive Father could not take care of Child and that Adoptive Mother was deceased.

> Court: I'm adjudicating dependent under Section 1. You know, to me the mother in this case deceased back in 2006. Father's health has prevented . . . him [from] caring for the child, as alleged. Actually, I didn't take much testimony from dad on that. But basically, Dad, you're telling me that you can't care for [Child] anymore; correct?
>
> [Father]: (via telephone) Yes.

---

ment is not a court order, it is significant to mention that this written agreement was also moot at the time of the filing of the December 22, 2008 petition for dependency. CYF could claim legal custody of Child from the time he was adjudicated dependent in July of 2008

until his Juvenile Court case was closed on December 3, 2008. 42 Pa.C.S.A. § 6351. Additionally, on December 3, 2008, the trial court returned full legal custody of Child to Adoptive Father.

Court: Are there any disagreements with the facts as alleged in the petition under Section 1? Just the facts. Not the legal conclusions, but the facts.

. . . .

Ms. Domzal: No, Your Honor. I think father, from his own testimony said that he is unable to care for the child; and mother is deceased. By operation of law we have dependency.

Notes of testimony, 3/4/09 at 6.

¶ 20 Further, when granting party status, the court cannot look at the petition alone. Rather, the court must consider all of the evidence provided on the record to support a conclusion as to whether one's care and control of a child is actually in question at the time the dependency petition was filed. We find the case of *In re L.C., II*, persuasive in terms of S.M.'s argument of care and control. In *In re L.C., II*, a grandmother appealed from a court order denying her standing to participate in the proceeding at which her grandson was adjudicated dependent. The child had lived with his grandmother for the first 14 years of his life. On July 8, 2003, when the child was 15 years of age, legal and physical custody were then given to the child's mother. The grandmother was granted partial custody one weekend per month. *In re L.C., II*, 900 A.2d at 379.

¶ 21 In December 2004, a juvenile delinquency petition was filed regarding L.C., alleging sexual offenses against a nine-year-old girl. The child was adjudicated dependent and placed under the supervision of Indiana County Children and Youth Agency. The grandmother sought standing to participate in the child's dependency hearing. The trial court denied the grandmother's petition even though the child had lived most of his life with her, because the child now lived with his mother and because his mother had legal custody. The grandmother appealed and we found that she did not have standing to participate as a party. "The trial court's rationale for its decision was two-fold: (1) Grandmother did not have legal custody or *in loco parentis* status at the time of L.C.'s alleged offense; and (2) Grandmother's care, custody and control were not at issue in the dependency proceeding." *Id.* at 380. On appeal, we stressed that the grandmother was not the parent or the legal custodian of the juvenile whose dependency was at issue; and her care and control of the juvenile was not in question because at the time the child committed the offenses that led to the dependency proceedings, he was in the legal and physical custody of his mother not his grandmother. *Id.* at 382.

¶ 22 Similarly, as Child did not reside with her at the time of the filing of the dependency petition and as S.M.'s care and control was not at issue at the hearing on dependency, S.M. cannot be conferred standing. Practically speaking, the *In re L.C., II*, court noted, "[i]f the trial court had determined that he were not a dependent child, he would have been returned to the custody of Mother." *Id.* Likewise, if Child in the instant case was found not to be dependent, Child would have been returned to Adoptive Father, not S.M.

¶ 23 Furthermore, we disagree with S.M.'s theory that she stood *in loco parentis* and therefore had standing to pursue her petition.

Pennsylvania recognizes the common law doctrine of *in loco parentis*. 'In *loco parentis* is a legal status and proof of essential facts is required to support a conclusion that such a relationship exists.' *T.B. v. L.R.M.*, 567 Pa. 222, 786 A.2d 913, 916 (2001). Our Supreme Court has defined *in loco parentis* as follows:

The phrase *'in loco parentis'* refers to a person who puts oneself [sic] in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties.... The rights and liabilities arising out of an *in loco parentis* relationship are, as the words imply, exactly the same as between parent and child.

*Peters v. Costello,* 586 Pa. 102, 891 A.2d 705, 710 (2005) (citation omitted).

As *in loco parentis* status provides an individual with the same rights as a parent, it logically follows that an individual standing *in loco parentis* to a child has the same right to standing as a parent in proceedings pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6301, *et seq.* with respect to that child.

*In re D.K.,* 922 A.2d at 932–933.

¶ 24 S.M. posits that she should be granted standing based on this theory as she presented such an argument as to her status *in loco parentis* at the July 9, 2008 adjudicatory hearing, and she claims the trial court accepted this theory. (S.M.'s brief at 29–31.) She further reiterates her previous argument as to her care and control over Child and reminds this court that Child resided with her from 2006 until October 3, 2008.

¶ 25 As we stated previously in the memorandum, the facts at the July 9, 2008 hearing are not directly related to the dependency adjudication which occurred on March 4, 2009. We reiterate that contrary to S.M.'s assertions, she was not *in loco parentis* to Child at the time of the filing of the December 22, 2008 petition for dependency. Since the July 2008 dependency hearing, Child had been removed from S.M.'s care pursuant to an ECO; legal and physical custody of Child were returned to Adoptive Father and the case was closed. S.M. admits Child was living with Adoptive Father at the time the dependency petition at issue was filed. (S.M.'s brief at 34.) Child came into care because Adoptive Father called CYF and asked for assistance. Again, as the trial court notes in its Rule 1925(a) opinion,

During the second dependency case and the case from which S.M. has filed this appeal, it was again the care and control of the adoptive parent that was at issue. S.M. was being considered as a possible placement resource, but it was not her care and control that was at issue.

Trial court opinion, 5/4/09 at 7.

¶ 26 S.M. has directed our attention to the case of *In re D.K.* regarding the legal status of *in loco parentis;* such reference is unavailing. In that case, we vacated the trial court's order which denied standing to the appellant to participate in juvenile dependency proceedings. *In re D.K.,* 922 A.2d at 935. The appellant had been acting as a caregiver for the two children at issue for most of their lives and had been caring for the children at the time of the dependency proceeding as a foster parent. The panel specifically concluded that "although Appellant was not the legal custodian of the children [rather DHS had legal custody], he stood *in loco parentis* to the children at the time of their adjudication *and his care and control of them was in question at the hearing[.]*" *Id.* (emphasis added). In the case *sub judice,* even if we assume S.M. stood *in loco parentis* to Child at some point in the past due to an intermittent period of physical custody, her care and control of Child was not in question at the dependency hearing as Child was living with Maternal Uncle.

¶ 27 Additionally, S.M. argues that she had a substantial, direct, and immediate interest in the outcome of the dependency matter which grants her standing to participate. (S.M.'s brief at 26.) S.M. relies on *In re M.K.*, 431 Pa.Super. 198, 636 A.2d 198, 200 (1994), *appeal denied*, 537 Pa. 633, 642 A.2d 486 (1994), *cert. denied*, 513 U.S. 962, 115 S.Ct. 423, 130 L.Ed.2d 338 (1994), to support her argument that she should have had standing as the trial court's dispositional order affected her rights by compelling her to cooperate with CYF, to provide a drug and alcohol evaluation, and to submit to random urine screens. We agree with the GAL's argument that *In re M.K.* is distinguishable.

¶ 28 In *In re M.K.*, we were called upon to determine whether the natural mother's paramour had standing *to appeal* her child's dependency adjudication when the adjudication was based on the finding that the paramour sexually abused the child. In the matter before us today, S.M. is not seeking standing to bring this appeal. Rather, she is seeking standing to be considered a party in the dependency proceeding.

¶ 29 Further, in *In re M.K.*, we found that the paramour had standing to appeal the dependency order when (1) the court made a direct finding of the appellant's complicity in the sexual abuse against the child, (2) the order required the paramour to undergo rehabilitation and have no future contact with the child; and (3) the paramour had been in a long-term, live-in relationship with the mother. *Id.* at 200. Thus, the court order substantially, directly, and immediately affected his rights.

¶ 30 Herein, the trial court only considered Adoptive Father and Adoptive Mother when making its finding of dependency. Additionally, while the order provides directives against appellant concerning her substance abuse, we find the directives were in consideration of S.M. as a potential placement resource for Child and are not related to whether she had standing to participate in the dependency proceedings. S.M.'s inclusion in the court's order is logical as she was permitted to continue visitation with Child and because she was holding herself out as a placement resource; the court's attempt to insure that S.M. is healthy and stable cannot be construed to afford standing to S.M. The objective of the court to continue visitation does not elevate S.M.'s status to a party with standing to participate in the determination of dependency.

¶ 31 Therefore, we find that the trial court properly denied standing to S.M. *See In re F.B.*, 927 A.2d 268, 273 (Pa.Super.2007), *appeal denied*, 598 Pa. 750, 954 A.2d 577 (2008) (holding that grandparents did not have standing in the dependency proceedings when they did not meet any of the categories for "party" status). We recognize S.M.'s desire to provide care for Child and the reality of her position as the biological mother whose rights were previously terminated. We note that denying S.M.'s motion to intervene in the dependency proceedings in no way affects her ability to file a petition for custody of Child. *See In re D.S.*, 979 A.2d at 905, citing *In re L.C., II*, 900 A.2d at 381. The Juvenile Act mandates that the adjudication and the disposition of a dependent child are to be addressed separately and in sequential order. 42 Pa.C.S.A. §§ 6301–6365. The court allowed S.M. to be present at the adjudication hearing, and the record suggests she would continue to be included in the future. When keeping Child in foster care with his Maternal Uncle, the trial court appropriately deferred further custody and placement decisions for another day. The trial court simply and properly denied S.M. standing to par-

ticipate as a party in Child's hearing to adjudicate dependency.

¶ 32 For all of the reasons set forth above, we conclude that there was no error in the trial court's ruling. Accordingly, we affirm the trial court's order denying standing to S.M.

¶ 33 Order affirmed. Motion for counsel to withdraw granted.