### Appeal of Department of Human Services.

Superior Court of Pennsylvania.

Argued Feb. 23, 2010.
Filed June 3, 2010.

Craig R. Gottlieb, Philadelphia, for appellant.

Lester R. Zipris, Public Defender, Philadelphia, for appellee.

BEFORE: BOWES, OLSON, and FITZGERALD *, JJ.

OPINION BY OLSON, J.:

¶ 1 Appellant, City of Philadelphia, Department of Human Services ("DHS"), ap-

peals from an order directing DHS to provide kinship care payments to W.W. ("Grandmother"), the paternal grandmother of dependent [1] child, J.P. ("Child"). We affirm.

¶ 2 The trial court set forth the factual background and procedural history of this case as follows:

On July 23, 2008, the juvenile court adjudicated [Child] a dependent child and ordered DHS to make a referral for kinship care for [Grandmother], with whom [Child] resided. During a hearing on December 19, 2008, it was reported that [Grandmother] voluntarily disclosed to the kinship care social worker that she had a nineteen-year[-]old conviction for aggravated assault.[1] Notwithstanding [Grandmother's] conviction, DHS and the guardian ad litem agreed that [Child] should remain in the care of [Grandmother]. DHS and the guardian ad litem disagreed, however, regarding providing [Grandmother] with kinship care payments.

DHS requested the juvenile court provide [Grandmother] with temporary legal custody of [Child] so that [Grandmother] could apply for public welfare benefits for [Child]. In contrast, the guardian ad litem argued that kinship care was in the best interest of [Child]. The sole basis of DHS's refusal to make kinship care payments was [Grandmother]'s self-reported nineteen-year[-]old conviction. After considering the best interest of the child, the limited funds available to DHS and that such payments are not reimbursable from [the Department of Public Welfare] DPW, the juvenile court ordered that [Child] remain with [Grandmother] and that [Grandmother] receive kinship care pay-

---

* Former Justice specially assigned to Superior Court.

1. *See* 42 Pa.C.S.A. § 6302.

ments [from DHS] for her care of [Child].

[1] Initial clearances obtained through the Federal Bureau of Investigation and Pennsylvania State Police did not reveal [Grandmother]'s conviction. (N.T. 12/19/2008 at 13–14, 17–18.) [Grandmother] testified that (1) the conviction did not relate to a minor child, (2) she paid her debt to society and (3) she is seeking to have the conviction expunged. *Id.* at 19.

Trial Court Opinion, 10/13/09, at 1–2 (footnote in original).

¶ 3 On December 19, 2008, after the permanency review hearing, the trial court ordered Child to remain in kinship care with Grandmother and DHS was to provide kinship care payments to Grandmother. The court recognized that DHS could not get reimbursed for those payments from the state DPW. However, the court indicated that DHS could seek to recover its expenses from Child's mother. The trial court determined that its order would best serve Child's protection and physical, mental and moral welfare. *See* Trial Court Opinion, 10/13/09, at 6. This timely appeal followed.[2]

¶ 4 DHS raises one issue on appeal:

Did the trial court err in requiring [DHS] to approve a dependent child's [Grandmother] as a kinship care provider—when that grandmother had previously been convicted of aggravated assault, and when the trial court recognized that therefore the grandmother "does not qualify as kinship care parent" under the governing statute or regulations promulgated by the Department of Public Welfare (DPW)—based

upon the trial court's mistaken assumption that the statute and regulations somehow only limited DHS's authority to approve kinship care but did not limit the court's authority to order kinship care?

DHS's Brief at 4.

¶ 5 DHS argues that the trial court erred as a matter of law when it ordered Child to remain in kinship care[3] with Grandmother. Specifically, DHS argues that Pennsylvania statutory and case law bars Grandmother from being a kinship care provider.

¶ 6 Our scope and standard of review in dependency cases are as follows:

[W]e must accept the facts as found by the trial court unless they are not supported by the record. Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate. We review for abuse of discretion. Our scope of review, accordingly, is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and witnesses.

**2.** The trial court did not direct DHS to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925. We also observe that the amendment to Pa.R.A.P. 905 and 1925, requiring the concise statement to be filed concurrently with the notice of appeal, was not effective until March 16, 2009.

**3.** By way of background, "kinship care" is a subset of foster care where the care provider already has a close relationship to the child. 62 P.S. § 1303. In kinship care (as with foster care generally), legal custody of the child is vested in DHS. DHS then places the child with the care provider.

*In re C.M.*, 882 A.2d 507, 513 (Pa.Super.2005).[4]

¶ 7 DHS raises an issue of statutory construction.

Statutory interpretation is a question of law, for which we must be guided by the Statutory Construction Act, 1 Pa. C.S. §§ 1901–91.... The object of interpretation and construction of all statutes is to ascertain and effectuate the intent of the General Assembly. *See* 1 Pa.C.S. § 1921(a). When the words of a statute are clear and free from all ambiguity, their plain language is generally the best indication of legislative intent. A reviewing court should resort to other considerations to determine legislative intent only when the words of the statute are not explicit. 1 Pa.C.S. § 1921(b). Moreover, it is axiomatic that in determining legislative intent, all sections of a statute must be read together and in conjunction with each other, and construed with reference to the entire statute.

If possible, we must avoid a reading that would lead to a conflict between different statutes or between individual parts of a single statute. Finally, we must presume that when enacting any statute, the General Assembly intended to favor the public interest as against any private interest.

*E.D.B. v. Clair*, 987 A.2d 681, 684 (Pa. 2009) (citations and footnotes omitted).

¶ 8 In support of its argument, DHS first invokes 23 Pa.C.S.A. § 6344(a) and (c)(2) of the Child Protective Services Law. Those sections state:

### § 6344. Information relating to prospective child-care personnel

(a) APPLICABILITY.—This section applies to all prospective employees of child-care services, prospective foster parents, prospective adoptive parents, prospective self-employed family day-care providers and other persons seeking to provide child-care services under contract with a child-care facility or program. This section also applies to individuals 14 years of age or older who reside in the home of a prospective foster parent for at least 30 days in a calendar year or who reside in the home of a prospective adoptive parent for at least 30 days in a calendar year. This section does not apply to administrative or other support personnel unless their duties will involve direct contact with children.

(c) GROUNDS FOR DENYING EMPLOYMENT.— ...

(2) In no case **shall an administrator hire an applicant** if the applicant's criminal history record information indicates the applicant has been convicted of [enumerated crimes, including aggravated assault].

23 Pa.C.S.A. § 6344(a), (c)(2) (emphasis added). According to DHS, those provisions bar the court from naming Grandmother as a kinship care provider, because she has an aggravated assault conviction.

¶ 9 The trial court rejected this argument. The court reasoned that the statute only prohibits **DHS** from hiring or naming a person such as Grandmother to be a kinship care provider; it does not prohibit the **court** from making such a designation.

---

4. DHS argues that our standard of review is *de novo*. Specifically, DHS argues that it is challenging the court's legal conclusion that Pennsylvania law does not bar the court from ordering DHS to keep the child in kinship care and pay for it. DHS is correct that our standard of review is *de novo* with respect to legal errors. *See C.M.* In any event, misapplication of the law is also an abuse of discretion. *A.D. v. M.A.B.*, 989 A.2d 32, 36 (Pa.Super.2010).

Trial Court Opinion, 10/13/09, at 3–5. We agree with the trial court. The plain language of the statute speaks only to DHS's duties; it does not disqualify the court from naming Grandmother as a kinship care provider.

■ ¶ 10 Next, DHS invokes a similar supporting regulation, 55 Pa.Code § 3490.123(d)(2). It states:

§ 3490.123. **Responsibilities of prospective adoptive parents, prospective foster parents, foster family care agencies and adoption investigators**

(d) A prospective adoptive parent or prospective foster parent may not be approved by a foster family care agency, an adoption agency, or a person designated by the court under 23 Pa.C.S. § 2535(a) when any of the following circumstances exist:

(2) The parent has been convicted of a crime [such as aggravated assault].

55 Pa.Code § 3490.123(d)(2). Again, as with 23 Pa.C.S.A. § 6344(c)(2), the regulation prohibits agencies such as DHS from approving prospective foster parents such as Grandmother. On its face, the regulation does not limit the powers of the trial court to designate such a person as a foster parent if the designation is in the best interests of the child.

■ ¶ 11 Next, DHS argues that the court's order violated 42 Pa.C.S.A. § 6351(a)(2)(iii). That section states:

§ 6351. **Disposition of dependent child**

(a) GENERAL RULE.—If the child is found to be a dependent child the court may make any of the following orders of disposition best suited to the safety, protection and physical, mental, and moral welfare of the child:

(1) Permit the child to remain with his parents, guardian, or other custodian, subject to conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child.

(2) Subject to conditions and limitations as the court prescribes transfer temporary legal custody to any of the following:

(i) Any individual resident within or without this Commonwealth, including any relative, who, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child.

(ii) An agency or other private organization licensed or otherwise authorized by law to receive and provide care for the child.

(iii) **A public agency authorized by law to receive and provide care for the child.**

42 Pa.C.S.A. § 6351(a)(1)–(2) (emphasis added).

¶ 12 DHS argues that because the trial court transferred legal custody of Child to DHS under § 6351(a)(2)(iii), the court is "limited by compliance with other laws"— such as § 6344 and its accompanying regulation, 55 Pa.Code § 3490.123(d)(2). DHS's Brief at 14–15; *see also* DHS' Reply Brief at 1–2.

¶ 13 Again, we disagree. Rather, the plain language of 6351 simply states that when a child is adjudicated dependent, the trial court may choose from any number of options, including transferring legal custody of the child to "a public agency authorized by law to receive and provide care for the child." That is what took place in the instant case. Here, it is undisputed that DHS is a public agency, and DHS is authorized by law to receive the child and provide care for him. The trial court transferred legal custody to DHS because DHS qualified as a public agency under

§ 6351(a)(2)(iii). For purposes of § 6351(a)(2)(iii), the phrase "authorized by law" modifies "public agency," and refers to DHS as an entity. The phrase does not in any way "import" laws that apply to public agencies, and convert those laws into restrictions on the power of the trial court. In short, the statutes that DHS cites do not warrant reversal.

¶ 14 Turning to case law, DHS argues that placement is inappropriate pursuant to this Court's recent decision in *In re D.S.*, 979 A.2d 901 (Pa.Super.2009). In that case, a child was adjudicated dependent and placed with her grandmother and step-grandfather. "However, in the fall of 2007, during the course of their investigation to qualify Grandmother as a foster parent, DHS discovered that Step–Grandfather had a twelve-year-old conviction for aggravated assault." *Id.* at 902. Invoking § 6344, DHS then "disqualified" Grandmother as a potential foster parent, and placed the children in another foster home. *Id.* at 902–903. Despite this move, the trial court appointed counsel for grandmother and permitted her to participate in the dependency proceedings. The court ultimately reversed its ruling, however, and denied her standing to participate. *Id.* at 903.

¶ 15 On appeal, this Court affirmed. We reasoned that the grandmother did not fit within the narrow classes of individuals who were entitled by law to participate in a dependency matter. *Id.* at 904–905. That portion of the *D.S.* opinion is wholly inapplicable to the instant case.

¶ 16 The grandmother also argued, however, that the trial court erred by holding that the grandmother was disqualified under § 6344 from being a foster placement resource.[5] Importantly, the grandmother's specific argument was that the court failed to consider the remoteness of her husband's aggravated assault conviction or the current capacity of the household to care for the child.

¶ 17 This Court ruled that the grandmother's argument was waived on appeal for failing to raise it in a timely fashion. *Id.* at 906. In the alternative, we held that the court did not err because the disqualifying language in § 6344 contained no time limits. *Id.* We also noted that from a constitutional perspective, a lifetime ban is "rationally related to the legitimate state interest in protecting children." *Id.*

¶ 18 *D.S.* is factually and procedurally inapposite. In that case, DHS took affirmative efforts to "disqualify" the grandmother. While the *D.S.* opinion does not explicitly say so, that disqualification in all likelihood took place under 42 Pa.C.S.A. § 6351.1. That section provides: "if a county agency petitions the court for removal of a child because the foster parent has been convicted of an offense [such as aggravated assault], the court shall immediately enter an order removing the child from the foster parent." 42 Pa.C.S.A. § 6351.1(a). That is what took place in *D.S.*[6] In stark contrast, DHS has never filed such a petition in the instant case. In fact, both DHS and the guardian ad litem agreed that child should be cared for by

---

**5.** Under § 6344, a person is disqualified if she or someone living in her household has been convicted. In *D.S.*, that person was the grandmother's husband.

**6.** Indeed, § 6351.1 further states that if the court disqualifies the foster parent pursuant to a DHS petition, it may then enter an order best suited to the child's welfare, but the court has "no authority" to return the child to that disqualified parent. 42 Pa.C.S.A. § 6351.1(b). In our view, this section indicates the Legislature's understanding of how to set clear limits on the trial court's authority. No such clear language exists in the statutes that DHS cites.

Grandmother. Moreover, the salient issues in *D.S.* were (1) grandmother's standing to participate in the proceedings after the child was removed from her care, and (2) the validity of the "lifetime" nature of the ban in § 6344. Those issues are not present in this case.[7]

¶ 19 For the reasons set forth above, we conclude that DHS has failed to demonstrate any legal error on the trial court's part. We also note that the trial court's order is fully consistent with the overall goal of § 6351, which is to order a placement that is "best suited to the safety, protection and physical, mental, and moral welfare of the child." Here, the trial court found that the current arrangement (legal custody with DHS, and placement of the child in Grandmother's care) is in the best interest of the child. DHS makes little if any effort to dispute that contention.[8]

 ¶ 20 Finally, the trial court properly found that DHS's reimbursement concerns should not control the outcome.[9] For this proposition, the trial court cited *In re Lowry*, 506 Pa. 121, 484 A.2d 383 (1984). In *Lowry*, the trial court transferred legal custody of various children under § 6351(a)(2)(i) to individuals whose homes had not yet been formally approved as foster care homes. Moreover, the court directed the county agency to fund the placements by paying "the current board rate per diem for foster home care." *Id.* at 386. As in the instant case, the county objected in part because such payments were not reimbursable by the state DPW, since the homes had not been approved.

¶ 21 Our Supreme Court ultimately affirmed the trial court's orders.[10] The high Court reasoned that the DPW's reimbursement rules did not translate into restrictions on the trial court's authority to issue placement orders that are in the best interest of the child:

Thus, the legislature has empowered the [DPW] to make and enforce regulations binding on the county institution[al] districts. It does not follow that rules and regulations so promulgated are binding upon a court of law vested with a separate, concurrent and broad power, under Section 6351 of the Juvenile Act[.] In ordering a disposition under § 6351, the court acts not in the role of adjudicator reviewing the action of an

7. DHS seizes on language in *D.S.* to the effect that "... § 6344 prohibits the authorization, without exception, of a person as a foster parent, if a person living in a prospective parent's home has a criminal conviction for aggravated assault." DHS's Brief at 15, *quoting D.S.*, 979 A.2d at 906. DHS takes this language out of context. First, this Court was merely paraphrasing the trial court's ruling, not announcing our own rule of law. *Id.* Moreover, the context was the lifetime nature of the prohibition, not the authority of the court to order placement despite a conviction.

8. Indeed, DHS would apparently prefer Grandmother not only to have physical custody, but to have **legal** custody as well. See DHS's Reply Brief at 6. Thus, DHS cannot reasonably argue that placement with Grandmother is not in Child's best interest. Of course, the effect of transferring legal custody to Grandmother would be to relieve DHS of responsibility for kinship care payments. Under DHS's preferred disposition, Grandmother would seek assistance from the state DPW. Trial Court Opinion, 10/13/2009, at 5.

9. DHS contends that the case is not all about money; it is about custody. According to DHS, a transfer of legal custody directly to Grandmother under § 6351(a)(2)(i) is preferable because under the current arrangement, Child "would remain indefinitely in the child welfare system because [Grandmother's] conviction would disqualify her as a candidate for receiving permanent legal custody and as an adoptive parent." At this juncture, however, we are only reviewing the trial court's decision to retain the current arrangement. As noted above, that decision was not an abuse of discretion.

10. The Supreme Court reversed this Court, which had reversed the trial court.

administrative agency, in which case, the regulations promulgated to bind that agency could not be ignored; rather the court acts pursuant to a separate discretionary role with the purpose of meeting the child's best interests. *Id.* at 386. The Court also noted that the county has the duty to support its dependent children; the extent to which those costs are reimbursed by the DPW is a separate issue entirely. *Id.* at 388. At times, county agencies will have to make unreimbursed expenditures. *Id.* Because the trial court's orders met the overriding goal of meeting the best interest of the children, and were not illegal, the orders were affirmed. *Id.*

¶ 22 We recognize that *Lowry* is not directly on point. Most notably, the *Lowry* order was a direct transfer of legal custody to an individual under § 6351(a)(2)(i), while the trial court's order in the instant case vests legal custody to an institution under § 6351(a)(2)(iii).[11] Moreover, the *Lowry* individuals' homes presumably could become compliant with the law within a reasonable time, while in the instant case, the prospect of Grandmother's conviction being expunged is less clear. We conclude, however, that these distinctions do not compel a different result. Rather we follow the *Lowry* court's broad dictates that DPW and DHS regulations do not "handcuff" the trial court's

primary discretionary authority to enter orders consistent with the child's best interests. *See also In re Tameka M.*, 525 Pa. 348, 580 A.2d 750 (1990) (approving trial court's order directing a county agency with legal custody of a child to pay the foster family's expenses for enrolling the child in a Montessori school, where that educational structure was in the best interest of the child, despite the county's objection that the expense was not reimbursable).[12] That being said, however, nothing herein shall be construed as giving carte blanche to trial courts to act in the best interest of the child regardless of statutory limitations the General Assembly may otherwise intend to place upon those interests. In this case, the trial court expressly recognized possible constraints by noting that "this juvenile court states unambiguously that its order applies only to the unique facts of this case as stated herein." Trial Court Opinion, 10/13/09, at 6. We believe the trial court's limiting language is appropriate.

¶ 23 In short, we conclude that the trial court's order was not erroneous as a matter of law, and was not otherwise an abuse of discretion. Thus, we affirm.

¶ 24 Order affirmed.

---

11. DHS notes that the *Lowry* Court drew some distinction between individual transfers and institutional transfers. Under § (a)(2)(i), an individual receiving custody of a dependent child need not be "authorized by law" to receive and care for the child. Rather, the individual need only be "designated by the court" as "qualified" to receive and care for the child. In contrast, under § (a)(2)(iii), an institution receiving custody must be "authorized by law" to do so. *Lowry*, 484 A.2d at 387. This distinction does not benefit DHS, however. As noted above, DHS is indeed "authorized by law" to receive and provide care for the child.

12. In a brief and underdeveloped argument, DHS argues that the trial court abused its discretion because it mistakenly assumed that DHS would be able to recoup its costs from the child's biological mother. *See* Trial Court Opinion, 10/13/09, at 6 ("As a result, it is likely that DHS will be made whole and that the juvenile court's order is revenue neutral to DHS.") We disagree. Even if the court's assessment was overly optimistic in this regard, the fact remains that the court had the authority to enter its order even if DHS is ultimately not made whole.