**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1400
_____

United States Ex Rel. The Minor Child K.E.R.G.;
LAWRENCE COX; NANCY RODRIGUEZ COX, Conservator of the Minor Child;
SERGIO RUIZ GUAJARDO, Grandfather of the Minor Child;
ADRIANA BEATRIZ RUIZ GUAJARDO, Great-Aunt of the Minor Child,
Appellants

v.

SECRETARY OF HEALTH AND HUMAN SERVICES;
ESKINDER NEGASH, Director of the Office of Refugee Resettlement (ORR);
TRICIA SWARTZ, Associate Deputy Director of Children's
Services of the Office of Refugee Resettlement (ORR);
SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY;
NOEL SANCHEZ, JR., Director of Field Operations,
Customs and Border Patrol Laredo, Texas Field Office
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 2-14-cv-01773)
District Judge:  Honorable Paul S. Diamond
_____

Submitted Under Third Circuit LAR 34.1(a)
January 22, 2016
_____

Before: FISHER, CHAGARES and BARRY, <u>Circuit Judges</u>

(Opinion Filed: February 5, 2016)
_____

OPINION[*]
_____

BARRY, <u>Circuit Judge</u>

    Lawrence Cox and Nancy Rodriguez-Cox, Conservators of the Minor Child ("the Coxes"); Sergio Ruiz Guajardo, Grandfather of the Minor Child ("Sergio"); and Adriana Beatriz Ruiz Guajardos, Great-Aunt of the Minor Child ("Adriana")(collectively "Petitioners"), appeal from the District Court's dismissal of their Amended Petition for Writ of Habeas Corpus and Complaint for Writ of Mandamus and Declaratory Judgment ("Amended Petition") in favor of the Secretary of Health and Human Services ("HHS"); the Associate Deputy Director of the Office of Refugee Resettlement ("ORR"); the Secretary of Homeland Security; and the Director of Field Operations, Customs and Border Patrol Laredo, Texas Field Office (collectively "Respondents"). This case revolves around the Coxes' attempt to be reunited with a special-needs child ("K.G."), with whom they have no familial relationship but for whom they cared some years earlier. When they attempted to bring K.G. into the United States, K.G. was taken from them, designated as an unaccompanied alien child ("UAC"), and put in the care of ORR/HHS. The Coxes obtained an order from a Texas state court appointing them as

---

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

conservators of K.G., but their subsequent Application for Reunification was denied by ORR.

The Amended Petition now before us was ultimately filed with the U.S. District Court for the Eastern District of Pennsylvania. Respondents moved to dismiss, contending that Petitioners lacked any legal basis for representing K.G.'s interests and failed to state a claim upon which relief could be granted. The Court granted the motion, finding that "none of the Petitioners is authorized to proceed on K.G.'s behalf[,]" due to, *inter alia,* the fact that the Coxes failed to obtain HHS's specific consent before obtaining the Texas state court's custody order, thus making the Texas "Conservatorship Order []  invalid under federal law." Petitioners allege that the Court erred because it (1) failed in its mandatory duty to appoint a guardian ad litem for the unrepresented minor child under Fed. R. Civ. P. 17(c)(2); and (2) failed to recognize the standing of the Coxes, Sergio, and Adriana. We will affirm.

## I. BACKGROUND

K.G., diagnosed with various cognitive and physical disabilities, was born in Matamoros, Mexico in 1999. From the time of her birth, she was cared for by her maternal great-grandmother, Maria Antonia Guajardo Corpus ("Antonia"). On March 18, 2001, Antonia met the Coxes in Matamoros and asked that they help pay for K.G.'s medicines for her seizures. From 2001 through August 2005, the Coxes did so, and helped Antonia in other ways as well. In January 2006, Antonia died. A month earlier,

however, she had asked the Coxes to care for K.G., which they did from January 2006 until May 28, 2011. In May 2011, the Coxes began to receive threats from local cartels as a result of the waves of violence that were taking place in Matamoros. The Coxes tried to find a way to have K.G. cross legally into the United States, and claimed to have arranged safe passage through the offices of Congresswoman Kay Granger and U.S. consular officials at the Department of State.

On June 7, 2011, Mr. Cox traveled with K.G. to the port of entry at Brownsville, Texas. Petitioners conceded that they had not obtained any written permission to bring K.G. into the United States from any United States official with authority to permit her entry. They also conceded that they lacked any documentation indicating permission to do so from anyone bearing a legal or biological relationship with K.G. Mr. Cox was met at the port of entry by a U.S. consular official, Jason Monks, and Alma Idalia Rodriguez ("Alma"), Ms. Rodriguez-Cox's sister.

Upon inspection, agents of the Department of Homeland Security Customs and Border Patrol took custody of K.G., and a request for humanitarian parole was denied. The seizure of K.G. was based on allegations of sexual abuse made against Mr. Cox by Alma. K.G. was designated as a UAC and her custody and care were turned over to ORR, a component agency of HHS. HHS transferred K.G. to a UAC care facility in Chicago, and then placed her in a Philadelphia-area long-term funded foster care facility until September 2014, when she was transferred to an institutional facility in California.

4

The Coxes made numerous efforts to obtain information and be considered for custody. In July 2011, they were informed by ORR that K.G. would be placed with her grandfather, Sergio, who was undocumented and living in North Carolina. Sergio, however, agreed to relinquish any rights he may have had as to K.G. to the Coxes. ORR did not place K.G. with the Coxes, but neither did it place her with her grandfather.

On October 28, 2011, the Coxes initiated proceedings for conservatorship in a Texas state court. On April 13, 2012, full conservatorship regarding K.G. was granted to them. Less than one month after obtaining the order from the Texas court, the Coxes filed an Application for Reunification with ORR. On May 8, 2013, following an investigation, ORR denied the application, stating that, "[a]t this time ORR has made the decision that it is not in [K.G.'s] best interest that she be released to you." (A501-502.)

In early 2014, while still in Chicago, and after the Department of Homeland Security ("DHS") initiated removal proceedings against her, an Immigration Judge appointed counsel for K.G. from the Hebrew Immigrant Aid Society. K.G.'s counsel and DHS filed a joint motion to terminate removal proceedings, which the IJ granted on February 6, 2014. The following week, the Coxes moved to intervene on K.G.'s behalf, seeking to reopen the removal proceedings. New counsel was appointed for K.G. from Chicago's Young Center for Immigrant Children's Rights, and opposed the Coxes' motion. The IJ refused to reopen, ruling that the Coxes did not have standing to seek relief on K.G.'s behalf, that K.G. was properly designated as a UAC, and that the Texas

5

state court conservatorship order would not be recognized because HHS did not consent to Texas state court jurisdiction.

After K.G. was moved to the Philadelphia area from Chicago, K.G's counsel obtained an order in the Court of Common Pleas in Philadelphia declaring that K.G. was a dependent of the state. (In re: K.G., No. CP-51-DO (Common Pleas Ct. Phila. 2014).) With that order in hand, counsel filed an application with DHS for special immigrant juvenile status and lawful permanent residency. On August 16, 2014, DHS approved the application and adjudged K.G. a lawful permanent resident of the United States, rendering her eligible to be transferred to ORR's Unaccompanied Refugee Minor Program, where this now sixteen-year-old girl is able to remain until she is twenty-one. *See* 8 U.S.C. § 1232(d)(4)(A).

In March 2014, the Coxes filed in the U.S. District Court what later became the Amended Petition for Writ of Habeas Corpus and Complaint for Writ of Mandamus and Declaratory Judgment now before us. The Coxes purported to represent K.G., and asserted numerous allegations of wrongdoing against Respondents. Although they initially requested that the District Court enjoin any movement of K.G. from Pennsylvania, that motion was later withdrawn. On June 11, 2014, after a review of K.G.'s medical records and the background of the case, Magistrate Judge Timothy Rice concluded that "HHS is aware of and addressing [K.G.'s] health and educational issues." (A17.) In early December 2014, Judge Rice reviewed additional medical records and

6

determined that K.G. was being treated for major depression and was being seen regularly by medical staff. Later in December, he reported that his most recent review of the medical records "reflect that K.G. is receiving appropriate medical and mental care, and appears to be healthy and active." (*Id.*)

On September 4, 2014, Respondents filed a Status Report with the District Court, stating that HHS intended to transfer K.G. to the Crittenton Care Provider Program in Fullerton, California. Respondents stated that "[t]here are no available beds for K.G. in long-term foster care placement in Pennsylvania, including the foster family with whom she previously resided." (A17.) Once in California, the Crittenton program "intends to pursue long-term foster care placement" and "eventually transition K.G. to a long-term foster care under the URM program." (*Id.*)[1]

On September 5, 2014, Respondents moved to dismiss the Amended Petition arguing that Petitioners lacked any legal basis for representing K.G.'s interests and otherwise failed to state a claim upon which relief could be granted. By Opinion and Order of December 30, 2014, the District Court granted Respondents' motion in its entirety, and declined to appoint counsel "to prosecute a Habeas Petition on K.G.'s behalf [as] unnecessary," finding that "the appointment of a lawyer at this juncture would undermine K.G.'s best interests." (A22.) It noted that ORR had "rejected Petitioners' May 2012 Application for Reunification," and relied upon Magistrate Judge Rice's

---

[1] Petitioners filed another motion to enjoin K.G.'s transfer to California on September 8, 2015. That motion was denied.

finding that in foster care, K.G. "is receiving appropriate medical and mental care, and appears to be healthy and active." (*Id.*) Nonetheless, the District Court granted Petitioners leave to amend their Amended Petition. Petitioners did not do so but, rather, filed this appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291. We review a district court's decision granting a motion to dismiss under a plenary standard. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 206 (3d Cir. 2009). We first accept all well-pleaded factual allegations as true and disregard the plaintiff's legal conclusions. *Id.* at 210–11. We "then determine whether the facts alleged ... are sufficient to show that the plaintiff has a plausible claim for relief." *Id.* at 211 (internal quotation marks omitted).

## III. ANALYSIS

**A. The District Court correctly concluded that no Petitioner was authorized under Fed. R. Civ. P. 17(c)(1) to proceed on K.G.'s behalf.**

Fed. R. Civ. P. 17(c)(1) states that "[t]he following representatives may sue or defend on behalf of a minor or an incompetent person: (A) a general guardian; (B) a committee; (C) a conservator; or (D) a like fiduciary. Fed. R. Civ. P. 17(c)(1). Additionally, "no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such

jurisdiction." 8 U.S.C. § 1101(a)(27)(J)(iii)(I). HHS has established procedures for requesting specific consent, which require the completion and submission of a form available on HHS's website.

The District Court dismissed Petitioners' Amended Petition because "none of the Petitioners is authorized to proceed on K.G.'s behalf." (A19.) The Court found that because the Coxes failed to obtain HHS's specific consent before obtaining the Texas state court's order, that order is thus invalid under federal law. It also rejected Petitioners' argument that either K.G.'s grandfather, Sergio, or maternal aunt, Adriana, could file a federal suit on K.G.'s behalf or confer upon the Coxes the right to sue on K.G.'s behalf, finding that, as required by Rule 17, neither Sergio or Adriana was K.G's "general guardian, conservator, or like fiduciary." (*Id.*)

Petitioners argue that the District Court's finding as to Sergio is in direct violation of the Pennsylvania state statute which provides that:

> "The following individuals may file an action under this chapter for any form of physical custody or legal custody:
> ….
> (3) A grandparent of the child who is not in loco parentis to the child:
>> (i) whose relationship with the child began either with the consent of a parent of the child or under a court order;
>> (ii) *who assumes or is willing to assume responsibility for the child*; and
>> (iii) when one of the following conditions is met: …
>>> (a) the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);

9

23 Pa.C.S.A. § 5324. (emphasis added). Petitioners contend that even though Sergio has had no previous contact with K.G., he is willing to cede physical care and custody to the Coxes, and remains "willing to assume responsibility" for her. Petitioners do not articulate any specific argument as to Adriana.

Moreover, Petitioners assert that the Coxes can sue on K.G.'s behalf because they are the persons "whose care and control of the juvenile in question is in question.*" In re D.M.* 995 A.2d 371, 375 (Pa. Super. 2010). They argue that under the plain language of Rule 17(c)(1), a conservator (like the Coxes) can do so, and contend that the District Court erroneously adopted Respondents' position that because the Texas order is unlawful, they lack standing. The problem with this, they say, is not only how Respondents read Rule 17(c)(1), but that their reading places the merits before the determination of who can sue on K.G.'s behalf.

Respondents reply that none of the Petitioners qualifies under Rule 17 to represent K.G.'s interests in federal court. They assert that because Petitioners failed to demonstrate that either Sergio or Adriana ever qualified as K.G.'s general guardian, conservator, or like fiduciary under either U.S. or Mexican law, the mere fact that the they are K.G.'s closest living relatives does not automatically entitle them to file claims on her behalf in federal court. Furthermore, Respondents argue that the Coxes cannot claim to be K.G.'s conservators based upon an order invalid under federal law, issued by the Texas state court, and that Petitioners' attempt to place the burden on Respondents for

10

their own failure cannot save their claim from dismissal. Petitioners, they argue, do not and cannot dispute that they did not receive the statutorily required specific consent from HHS to seek an order from a Texas state court regarding K.G.'s custody, while recognizing that this is a requirement under 8 U.S.C. §1101(a)(27)(J)(iii)(I).

We agree with the District Court, and will affirm. As an initial matter, K.G. was brought to the border without a "parent or legal guardian in the United States . . . available to provide care and physical custody," and thus was properly designated as a UAC and transferred into HHS's custody. *See* 6 U.S.C. § 279(g)(2)(c)(ii); 8 U.S.C. § 1232. The Coxes have conceded that they lack any legal or biological relationship to K.G. Additionally, as discussed above, it is undisputed that HHS's specific consent was required in order for a "court [to have] jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services." 8 U.S.C. § 1101(a)(27)(J)(iii)(I). Because the Texas state court lacked jurisdiction to grant the Coxes' conservatorship of K.G., the Coxes cannot qualify as "conservators" under Fed. R. Civ. P. 17(c)(1), and cannot rely on that invalid order to assert any legal claims on behalf of K.G. or request that the Court appoint independent counsel for her.

As for Sergio and Adriana, and as the District Court explained, the fact they are K.G.'s closest living relatives does not automatically entitle them to file claims on her behalf in federal court where they do not otherwise qualify under Rule 17. Indeed, no other reason has been articulated by Petitioners as to Adriana, and Petitioners have

conceded not only that Sergio has had no previous contact with K.G., but that the last known relative to have custody of her died more than ten years ago.

None of the Petitioners has demonstrated how under federal law, specifically Fed. R. Civ. P. 17(c)(1), he or she would qualify as a general guardian, conservator, or like fiduciary.

**B. The District Court did not err in denying Petitioners' request for it to appoint a "next friend" or a "guardian ad litem" under Fed. R. Civ. P. 17(c)(2).**

Petitioners, who themselves cannot sue to protect K.G.'s interests, nonetheless invoke federal jurisdiction on her behalf, arguing that the District Court should have appointed a "next friend" or a "guardian ad litem" to do so. We disagree.

The language of Fed. R. Civ. P. 17(c)(2) states:

> *Without a Representative.* A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action.

Fed. R. Civ. P. 17(c)(2). The Court declined to appoint one, finding it unnecessary due to the fact that "[t]wo different court-appointed lawyers represented K.G. during her Immigration Court removal proceedings and [] Pennsylvania state court dependency proceedings[,]" that "both lawyers ably advocated for K.G.[,]" and that "[i]f either lawyer thought that K.G.'s 'detention' in the ORR's Unaccompanied Refugee Minor Program

12

was illegal, he or she could have sought habeas relief." (A22.) The Court further found that "the appointment of a lawyer at this juncture would undermine K.G.'s best interests[,]" citing Judge Rice's conclusion that K.G. is "receiving the appropriate medical and mental health care, and appears to be healthy and active." (*Id.*) The Court also cited ORR's rejection of Petitioners' May 2012 Application for Reunification, which found that it was not in K.G.'s best interests to live with the Coxes. (*Id.*)

Petitioners, however, argued to the District Court, and now argue to us, that even if their application to serve as K.G.'s representatives was denied under F.R.C.P. 17(c)(1), the appointment of a next friend or guardian ad litem was mandatory under 17(c)(2), and not, as the Court concluded, discretionary and "unnecessary." (A22.) Respondents contended, and contend before us, that while Rule 17(c)(2) requires the appointment of counsel for an unrepresented minor in an action, K.G. was never properly before the Court as no Petitioner had any authority to represent her interests or raise claims on her behalf. They also contend that it cannot be that the Court must appoint counsel anytime an unrelated third party files a habeas petition on behalf of a UAC who is otherwise represented by counsel. We agree.[2]

## IV. CONCLUSION

_____

[2] We note, however, that even if K.G. were properly before us, "[t]he decision as to whether to appoint a next friend or guardian ad litem ***rests with the sound discretion of the district court*** and will not be disturbed unless there has been an abuse of its authority." *Gardner by Gardner v. Parson*, 874 F.2d 131, 140 (3d Cir. 1989)(citing *Developmental Disabilities Advocacy Ctr., Inc. v. Melton,* 689 F.2d 281, 285 (1st Cir.1982))(emphasis added).There surely has been no abuse of discretion here.

13

The District Court's Order of December 30, 2014 will be affirmed.