J. S11015/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF:    :  IN THE SUPERIOR COURT OF
S.D.C.-A., A MINOR     :   PENNSYLVANIA
            :
APPEAL OF:  T.A., MOTHER   :  No. 2279 EDA 2015


Appeal from the Order Entered June 25, 2015,
in the Court of Common Pleas of Philadelphia County
Family Court Division at Nos. CP-51-AP-0000651-2014,
CP-51-DP-0001242-2013


BEFORE:  FORD ELLIOTT, P.J.E., OTT AND MUSMANNO, JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:   **FILED APRIL 26, 2016**

T.A. ("Mother") appeals from the decree and order entered June 25, 2015, in the Court of Common Pleas of Philadelphia County, Family Court Division, granting the petition of the Philadelphia Department of Human Services ("DHS") and involuntarily terminating her parental rights to S.D.C.-A. ("Child"), born in March of 2007, pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and changing the permanency goal to adoption.  After review, we affirm.

The relevant procedural and factual history is as follows:

> On May 13, 2013, DHS received a General Protective Services (GPS) report alleging that the Mother's home was inappropriate for the child.  The allegations were that the kitchen door did not have a lock and it was secured by a table pushing against it.  The beds did not have linens.  Furthermore, the floor was filthy and filled with trash.  The home was filled with smoke.  Moreover, the home did not have gas service nor properly functioning electric.  The

refrigerator did not contain any food-it had mice droppings in it. Additionally, the mother smoked marijuana and used phencyclidine (PCP). Lastly, the mother left the child in the care of a neighbor while mom abused drugs. The report was substantiated.

On May 14, 2013, a DHS social worker did a home inspection/evaluation. The social worker determined that the home was inappropriate, therefore, the child could not remain in the home.

Subsequently, the mom identified a family friend, Ms. Hawthorne, as a possible caregiver for the child. Ms. Hawthorne agreed to care for the child. DHS implemented a Safety Plan which was signed by both Ms. Hawthorne and the Mother.

On June 17, 2013, DHS obtained an Order of Protective Custody (OPC) for S.C. The child, S.C. remained in the care of Ms. Hawthorne. The mother was not participating in drug treatment. Furthermore, she was actively abusing drugs. However, the [m]other informed DHS that she needed drug treatment.

A Shelter Care Hearing was held on June 19, 2013 before the Honorable Jonathan Q. Irvine. Judge Irvine lifted the OPC and ordered the temporary commitment to DHS to stand.

On June 27, 2013, an adjudicatory hearing was held before the Honorable Jonathan Q. Irvine. Judge Irvine adjudicated the child dependent and committed the child, S.C., to DHS. Furthermore, Judge Irvine ordered that the Mother be referred to the Clinical Evaluation Unit (CEU) for a drug and alcohol assessment. Moreover, he ordered forthwith drug and alcohol screens. Lastly, the mother was ordered to comply with the Family Service Plan (FSP) recommendations.

On December 17, 2013 DHS held and [sic] FSP meeting. The goals identified were to 1) participate in drug and alcohol treatment while remaining drug

> free, 2) participate in a mental health evaluations [sic] and comply with all treatment recommendations, and, 3) obtain appropriate housing. The mother attended the FSP meeting.[1]

Trial court opinion, 9/21/13 at 1-2 (unpaginated).

The trial court held permanency review hearings in this matter on September 26, 2013, December 4, 2013, and February 27, 2014. Throughout these reviews, the trial court maintained Child's commitment and placement, and permanency goal. Thereafter, at a permanency review hearing on May 15, 2014, Child, who had been in kinship foster care through Jewish Family Children Services ("JFCS"), was placed in regular foster care through JFCS.

On November 21, 2014, DHS filed petitions for goal change to adoption and for involuntary termination of parental rights. Subsequent to a hearing on December 10, 2014, the trial court found that Mother was in full compliance with the permanency plan, as she was involved in a drug and alcohol dual diagnosis program through Sobriety Through Out-Patient ("STOP") since October 15, 2014, had completed parenting classes as of August 15, 2014, and was complying with the supervised visitation

---

[1] Mother was additionally ordered to maintain visitation and contact with Child as well as the social worker. Of note, Mother's goals remained the same throughout the pendency of this matter.

schedule.[2]    The court scheduled a contested goal change/termination hearing for May 7, 2015.

On May 7, 2015, DHS proceeded with its request for a goal change to adoption and termination of parental rights.  All parties stipulated that DHS would testify as to the Statement of Facts in its petition.  DHS presented the testimony of DHS social worker, Janet Thurston, as well as JFCS worker, Michael Baldwin.  Following the hearing, the trial court issued an order the same date in which it found minimal compliance by Mother with the permanency plan, in that Mother did not comply with the FSP objectives, services, and recommendations.    Mother agreed to sign voluntary relinquishment petitions.  The court continued the case to allow for DHS outreach to Father regarding voluntary relinquishment.

On June 25, 2015, upon relisting, Mother refused to sign voluntary relinquishment petitions.  In an order entered the same date, the trial court ruled out reunification and changed the permanency goal to adoption.  By decree, the court further terminated involuntarily the parental rights of

---

[2] While Mother attached the transcript from this hearing as an appendix to her brief, this testimony cannot be considered by this court as it is not part of the certified record.  **See Commonwealth v. Preston**, 904 A.2d 1, 6 (Pa.Super. 2006) (**en banc**) (noting that an appellate may only consider that which is in the certified record).

Mother.[3]  On July 24, 2015, Mother filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother, through appointed counsel, raises the following issues for review:

> 1.  Did the Trial Court err in terminating the Appellant's parental rights under Pa.C.S. Section 2511?
>
> 2.  Did the Trial Court err in finding that termination of parental rights best served the children's [sic] developmental, physical and emotional needs under subsection 2511(b)?
>
> 3.  Did the Trial Court err in changing the children's [sic] goal to adoption?

Mother's brief at vi (proposed answers and answers below omitted).

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 616 Pa. 309, 47 A.3d 817, 826 (Pa. 2012).  "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.*  "[A] decision may be reversed for an abuse of discretion only upon demonstration of

---

[3] The trial court also terminated the parental rights of H.C. ("Father").  From a review of the record, Father was incarcerated for various periods of time and did not cooperate and/or make himself known to DHS throughout the duration of this matter.  He has not filed an appeal, nor is he a party to this appeal.

> manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id.*** The trial court's decision, however, should not be reversed merely because the record would support a different result. ***Id.*** at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. ***See In re R.J.T.***, 9 A.3d at 1190.

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

The termination of parental rights is guided by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***In re L.M.***, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear

conviction, without hesitance, of the truth of the precise facts in issue."

***In re C.S.***, 761 A.2d 1197, 1201 (Pa.Super. 2000) (***en banc***).

In this case, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), and (8), as well as (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), well as Section 2511(b). ***In re B.L.W.***, 843 A.2d 380, 384 (Pa.Super. 2004) (***en banc)***. Here, we analyze the court's termination pursuant to Section 2511(a)(2) and (b), which provide as follows:

> **(a)** **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b)** **Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of

- 7 -

> environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511 (a)(2), (b).

We first examine the court's termination of Mother's parental rights under Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015), quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002).

In the case at bar, in discussing Subsection 2511(a)(2), the trial court expressed "grave concerns regarding [Mother's] ability to parent her child"

which warrant termination. (Trial court opinion, 9/21/15 at 4 (unpaginated).) The court emphasized Mother's positive drug tests, Mother's missed drug and alcohol intake appointments, and Mother's failure to comply with drug and alcohol treatment. (***Id.***)

Mother argues DHS failed to present clear and convincing evidence that the causes of incapacity, abuse, neglect, or refusal cannot or will not be remedied. (Mother's brief at 3.) Mother asserts that, as she was "fully compliant" with all FSP objectives, completing parenting classes, regularly visiting with Child, and participating in a dual diagnosis program for mental health and drug and alcohol treatment, she established that she "can and did remedy the reasons the child came into care." (***Id.***)

A review of the record supports the trial court's finding of grounds for termination under Section 2511(a)(2). Mother tested positive for drugs on June 27, 2013, November 5, 2013, February 27, 2014, and May 15, 2014. (First Judicial District Family Court Behavioral Health System Clinical Evaluation Unit Report-Non-Compliance, 9/25/13; First Judicial District of Pennsylvania Family Division Substance Analysis Unit Urine Drug Testing Report, 11/5/13; DHS Exhibit #5, 5/7/15 (First Judicial District-Family Court Chemical Dependency Evaluation Narrative Summary, 5/15/14, at 1); First Judicial District Family Court Behavioral Health System Clinical Evaluation Unit Progress Report, 8/12/14.) Additionally, Mother missed intake and/or evaluation appointments on July 3, 2013, after rescheduling from July 3,

2013, March 31, 2014, May 1, 2014, and June 17, 2014. (First Judicial District Family Court Behavioral Health System Clinical Evaluation Unit Report-Non-Compliance, 9/25/13; DHS Petition for Goal Change to Adoption, 11/21/14, Exhibit "A," Statement of Facts, at ¶¶ t, x, y; First Judicial District Family Court Behavioral Health System Clinical Evaluation Unit Progress Report, 8/12/14.)

Further, regardless of any progress, DHS social worker, Janet Thurston, testified at the May 7, 2015 goal change/termination hearing that, while Mother's FSP objectives continued to include drug and alcohol and mental health treatment, Mother was not in either type of treatment at the time and had not successfully completed or been discharged from drug and alcohol treatment. (Notes of testimony, 5/7/15 at 9.) Hence, the record substantiates the conclusion that Mother's repeated and continued incapacity, abuse, neglect, or refusal has caused Child to be without essential parental control or subsistence necessary for his physical and mental well-being. *See In re Adoption of M.E.P.*, 825 A.2d at 1272. Moreover, Mother cannot or will not remedy this situation. *See id.* Mother demonstrated continued drug use over an extended period of time, as evidenced by multiple positive drug tests. Additionally, Mother exhibited the inability to successfully complete treatment, despite repeated opportunity, as evidenced by numerous missed appointments for intake and/or

evaluation, and the testimony of Ms. Thurston that Mother was not enrolled in and had not successfully completed treatment.

We next determine whether termination was proper under Section 2511(b). With regard to Section 2511(b), our supreme court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, 620 A.2d at 485, this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267. "[I]n cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa.Super. 2010) (citations omitted).

In the instant matter, the trial court opined that Child did not have a parental bond with Mother and did not look to Mother for "love, safety, security and to meet his basic needs." (Trial court opinion, 9/21/15 at 5

- 11 -

(unpaginated).) The court further highlighted the testimony of the JFCS worker who supervised Mother's visitation with Child that Child "would not suffer permanent emotional harm if the Mother's rights were terminated and she could not see the child." (*Id.*)

Mother, however, argues that, given her visitation with Child and the lack of a pre-adoptive home, termination of her rights is contrary to Child's best interests as it "would terminate the only love, comfort, security and stability that this child has ever known, and essentially leave this child an orphan." (Mother's brief at 5.) Here, the record likewise corroborates the trial court's termination pursuant to Section 2511(b). Initially, we note that, while Mother had visitation with Child, this visitation was not unsupervised. (Permanency review order, 12/10/14.) In addition, it was stipulated at the goal change/termination hearing that DHS would testify Child does not share a "parental bond" with Mother and does not look to Mother for "love, safety, security, and his/her basic needs to be met." (Notes of testimony, 5/7/15 at 6-7; DHS petition for goal change to adoption, 11/21/14, Exhibit "A," statement of facts, at ¶¶ vv, ww.) Moreover, as emphasized by the trial court, the agency worker for JFCS who supervised Mother's visits with Child, Michael Baldwin, testified at this hearing to his belief that Child would not suffer permanent emotional harm if Mother's rights were terminated, and she could not see Child. (Notes of testimony, 5/7/15 at 10.) Thus, as confirmed by the record, the emotional needs and welfare of Child favor

- 12 -

termination. Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Mother's parental rights under 23 Pa.C.S.A. §§ 2511(a)(2) and (b).

We lastly turn to whether the trial court appropriately changed the permanency goal to adoption. In so doing, we first note that our standard of review is the same abuse of discretion standard as noted above. *In the Interest of L.Z*111 A.3d 1164, 1174 (Pa. 2015), citing *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010), for the proposition that the abuse of discretion standard applies in a dependency matter). Further, following an examination and findings of factors provided in 42 Pa.C.S.A. § 6351(f) and (f.1), regarding matters to be determined at the permanency hearing, the trial court must also find that a goal change is in Child's best interests. *See* 42 Pa.C.S.A. § 6351(g); *In re R.J.T.*, 9 A.3d 1179 (Pa. 2010).

The primary purpose of the disposition of a dependent child is to examine what is in the best interest of the child. 42 Pa.C.S.A. § 6351(a); *In the Interest of Z.W., et al.*, 710 A.2d 1176, 1178 (Pa.Super. 1998). *See also In re Tameka M.*, 580 A.2d 750, 753 (Pa. 1990) (stating, "In ordering a disposition under Section 6351 of the Juvenile Act, the court acts not in the role of adjudicator reviewing the action of an administrative agency, . . . rather the court acts pursuant to a separate discretionary role with the purpose of meeting the child's best interests," quoting *In re Lowry*, 484 A.2d 383, 386 (Pa. 1984)).

In the case at bar, Mother posits that the trial court should not have changed the permanency goal to adoption as she had complied with all of her FSP goals and as Child had no adoptive resource.[4] (Mother's brief at 6.) However, upon review of the record, we disagree with Mother. The record reveals that a change of the permanency goal to adoption was in Child's best interests. Mother tested positive for drugs on numerous occasions over an extended period of time and repeatedly missed appointments relating to evaluation and/or treatment. While Mother was enrolled in a treatment program, six months later the DHS social worker, Ms. Thurston, testified that Mother was not currently in a program and never completed treatment for either drugs and alcohol or mental health, as was required. Further, the JFCS worker who supervised Mother's visitation with Child, Mr. Baldwin, testified as to his belief that it is "in the child's best interest that the goal be changed to adoption." (Notes of testimony, 5/7/15 at 11.) Therefore, the record supports that a goal change was in Child's best interests. Accordingly, after review of the record, we again discern no abuse of

---

[4] Mother argues that the change of goal to adoption is error because there is not a pre-adoptive resource. Although not addressed by the court, there is an indication in the record at page 20 of the agency's Petition for Termination, on the Adoption Plan Status Form, that a foster parent adoption was anticipated. This court cannot verify the accuracy of the form; however, on the basis of this record as a whole, the termination and goal change were appropriate.

discretion and conclude that the trial court properly changed the permanency goal to adoption.[5]

Based on the foregoing analysis of the trial court's termination of Mother's parental rights and change of permanency goal, we affirm the decree and order of the trial court.

Decree and order affirmed.

Judgment Entered.

JosephD.Seletyn,Esq.
Prothonotary

Date: 4/26/2016

---

[5] This court notes with great displeasure and concern that the brief filed by DHS in this case appears to relate frequently to some other case. The brief indicates that four children are involved at various points in the brief and at page 14, identifies a "grandmother caregiver" who is bonded to the "children" and is a pre-adoptive resource. These facts do not appear to relate to this appeal in any way. In matters such as this, involving the termination of a parent's rights and the best interest of the child, this court takes review of the record very seriously, and it is on this basis that we affirm.