J-A17017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: K.L., A MINOR : IN THE SUPERIOR COURT OF
            :    PENNSYLVANIA
            :
APPEAL OF: SUPPORT CENTER FOR :
CHILD ADVOCATES       :
            :
            :
            :
            : No. 567 EDA 2022

Appeal from the Order Entered January 26, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0001379-2019

IN THE INTEREST OF: J.O., A MINOR : IN THE SUPERIOR COURT OF
            :    PENNSYLVANIA
            :
APPEAL OF: SUPPORT CENTER FOR :
CHILD ADVOCATES       :
            :
            :
            :
            : No. 568 EDA 2022

Appeal from the Order Entered January 26, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000135-2020

BEFORE:   PANELLA, P.J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:     **FILED AUGUST 22, 2022**

   Appellant Support Center for Child Advocates appeals from the orders

that vacated its appointment as Guardian *ad litem* ("GAL") for K.L. and J.O.

(collectively "Children") in two related dependency proceedings.   Appellant

---

[*] Retired Senior Judge assigned to the Superior Court.

argues that the trial court erred by vacating Appellant's appointment as GAL for Children. We reverse.

We adopt the trial court's summary of the relevant facts and procedural history in this matter. *See* Trial Ct. Op., 3/29/22, at 5-15. Briefly, this matter involves two children, K.L. and J.O. K.L. and J.O. are half-siblings, and they are both the children of Y.O. (Mother). In August of 2019, Appellant was appointed as GAL and legal counsel for K.L. in dependency proceedings. After a series of hearings, K.L. was adjudicated dependent, removed from Mother's care, and placed in a kinship care home. By January 26, 2022, Mother had executed a voluntary relinquishment of her parental rights to K.L.

Appellant was appointed as GAL and legal counsel for J.O. in January of 2020. J.O. had multiple unattended health problems which necessitated his removal from Mother's care. After a series of hearings, J.O. was adjudicated dependent, removed from Mother's care, and placed in the care of a family friend, R.T. The trial court also awarded legal custody of J.O. to the Philadelphia Department of Human Services (DHS).

While in R.T.'s care, J.O. received treatment for some of his medical needs, including surgery at the Children's Hospital of Philadelphia. However, R.T. did not bring J.O. to all of his doctor's appointments with specialists. After R.T. indicated that she was moving to New York, J.O. was placed in the care of R.T.'s sister, S.D., on or about January 14, 2022. DHS was aware of this placement and began the process to certify S.D. as kinship care provider.

On January 26, 2022, the trial court held a dependency review hearing. At that hearing, Community Umbrella Association (CUA) caseworker Mileihka Colon testified about K.L.'s desire for her current caregiver to adopt her and stated that Mother had signed a voluntary relinquishment of her parental rights to K.L. N.T. 1/26/22, at 6-10. Appellant did not have any questions for Ms. Colon regarding K.L. *Id.* at 10. The trial court concluded that it was in K.L.'s best interests for the court to accept Mother's voluntary relinquishment and terminate Mother's parental rights to K.L. *Id.* However, the trial court continued K.L.'s dependency proceedings in order to allow DHS to obtain a copy of the death certificate for K.L.'s father. *Id.* at 10-13.

The trial court then conducted a permanency review hearing for J.O. *Id.* at 13-40. Ms. Colon testified that J.O. was currently placed with S.D. *Id.* at 13. Previously, J.O. had been placed with S.D.'s sister, R.T., who is a friend of Mother. *Id.* at 14, 21-22. J.O. was first placed with R.T. around April of 2020. *Id.* at 15. R.T. is not a certified kinship provider. *Id.* at 14. Ms. Colon acknowledged that J.O. has a strong connection with R.T. and wishes to remain with her. *Id.* at 14, 33.

Ms. Colon described J.O.'s health conditions which require treatment with various specialists. *Id.* at 15. Ms. Colon testified that R.T. did not bring J.O. to these appointments. *Id.* at 15-16, 28. J.O. was placed with S.D. in January of 2022 because R.T. moved to New York after having problems with the rent at her previous residence. *Id.* at 16. Ms. Colon testified that R.T. stated that she intended to move back to Philadelphia in March of 2022, but

she did not provide Ms. Colon with a specific date. *Id.* at 20. Currently, CUA is working to certify S.D. as a kinship care provider. *Id.* at 22.

Appellant then cross-examined Ms. Colon. During that cross examination, Ms. Colon confirmed that R.T. had arranged for J.O. to have surgery at Children's Hospital of Philadelphia. *Id.* at 23-25. Ms. Colon acknowledged that R.T. brought J.O. to many medical appointments but stated that R.T. could not meet J.O.'s medical needs due to the missed appointments. *Id.* at 25-29. The trial court interjected, and the following exchange occurred:

> [Trial court]: I'm not sure where you're going with this. That's not an issue here. The issue is, [R.T.] is currently an uncertified former care giver. I'm not sure what you're doing.
>
> [Appellant]: Your Honor, the testimony that I'm hoping to elicit for your judgment --
>
> [Trial court]: -- You want to show that she gave good care for the child?
>
> [Appellant]: Correct.
>
> [Trial court]: No one is questioning that.
>
> [Appellant]: It has been at issue, Your Honor, and maybe not before you, but I'm certainly creating a record --
>
> [Trial court]: -- Well, I'm the only one that matters right now.
>
> [Appellant]: -- to ensure that [R.T.] is seen as stellar care giver to [J.O.]
>
> [Trial court]: Well, I'm not sure that's our role because you appear to be advocating for a non-certified care giver.
>
> [Appellant]: It's to watch out for the best interests of our client.
>
> [Trial court]: Listen to me, please. While you're advocating for a non-certified care giver, under the rules of [DHS], she's not able

- 4 -

to be certified, and because she is not certified, she therefore is not able to be considered a certified care giver.

She appears to have done wonders for this child in the past, and there is no such thing as defining her to be a stellar care giver. I'm not sure where you're coming up with that, and that's not our job. Your job is to represent this child.

Finish up, please.

*Id.* at 29-31.

On redirect examination, Ms. Colon testified that the certifying agency stopped the process of certifying R.T. as a caregiver because R.T. did not return their phone calls asking for information. *Id.* at 33.

During closing arguments, counsel for DHS recommended that J.O. remain with S.D. *Id.* at 35-36. Appellant argued for J.O. to be returned to R.T.'s care when she returned to Philadelphia. *Id.* at 36-37. Appellant contended that J.O. wished to remain with R.T., that R.T. served J.O.'s best interests for two years, and that R.T. facilitates a healthy relationship between J.O. and his Mother. *Id.* at 37. Mother's counsel joined that request. *Id.*

The trial court responded:

I find it ironic that all the argument is in favor of [R.T.], and the child advocate seems to have converted herself into an advocate for [R.T.] and not the child.

Because I believe the child advocate has lost perspective in this case and has not focused on the best interests of the child, I am going to vacate the appointment of the child advocate and refer the matter to court administration for appointment of a new child advocate.

In the interim, I am going to grant your request to move the child, pending certification, to a care giver, a home of a care giver who is certified by the Department.

> What I'm hearing is, the child was with an uncertified care giver, although it appears there is no question she gave adequate care, but the testimony further reflects that she's not quite the stellar person that the child advocate believes she is.
>
> There have been issues and there have been vacancies in her ability, and although she's done a pretty good job, I need to make sure that the law is followed here, and the law is that a care giver must be certified in order to proceed with all of the other requirements to make sure that this child's future is cared for.
>
> I don't doubt that [R.T.] did a good job. I question the child advocate's impartiality and that's why I am vacating the child advocate.

*Id.* at 37-39.

The trial court's order for J.O. to remain with S.D. and vacating Appellant's appointment as GAL for J.O was reduced to writing that same day. *See* Trial Ct. Order, 135-2020, 1/26/22, at 1-2. The trial court also issued a written order directing that K.L. remain in foster care and vacating Appellant's appointment as GAL for K.L. because "the court finds the GAL is not acting in [K.L.'s] best interest." Trial Ct. Order, 1379-2019, 1/26/22, at 1. The trial court subsequently appointed a new attorney to serve as GAL for Children.[1]

---

[1] On January 31, 2022, Appellant filed a motion for reconsideration, listing both trial court docket numbers, seeking reconsideration of the trial court's dependency orders removing Appellant as GAL. However, it appears that the trial court did not rule on these motions. Therefore, the motion for reconsideration does not affect our jurisdiction over this appeal. *See Interest of C.B.*, 264 A.3d 761, 769 n.16 (Pa. Super. 2021) (noting that the "filing of motion for reconsideration does not toll thirty-day appeal period, unless trial court enters order expressly granting reconsideration within thirty days of entry of appealable order" (citation omitted)), *appeal denied*, 270 A.3d 1098 (Pa. 2022).

Appellant timely filed notices of appeal and statements of errors complained on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[2]  The trial court filed a responsive opinion addressing Appellant's claims.

Appellant raises the following issues for our review:

1. Did the trial court abuse its discretion when it vacated the appointments of the guardian *ad litem* to represent siblings, K.L. and J.O., where at no time did the guardian *ad litem* abdicate their fundamental legal, ethical and statutory responsibility to represent the needs and the wishes of their clients, J.O. and K.L., as set forth in the Juvenile Act, established by the Order of Appointment, and directed by the Rules of Professional Conduct, and when instead the guardian *ad litem* acted all times with loyalty, diligence, and zeal to ensure that the complex needs of each youth are and were well-served by their custodian and caregivers.

2. Did the trial court abuse its discretion in depriving the youth K.L. of representation by counsel with whom K.L. had developed a trusting bond over a two-year period and in doing so, did the trial court also deprive both K.L. and the Appellant of due process when the trial court vacated Appellant's appointment of K.L. after the conclusion of the hearing when the parties had been excused from the courtroom?

Appellant's Brief at 5-6 (formatting altered).

In its first issue, Appellant argues that the trial court abused its discretion in removing Appellant as GAL for Children based on Appellant's

---

[2] Appellant filed a separate notice of appeal at each trial court docket pursuant to **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), and Pa.R.A.P. 341(a).  On March 23, 2022, this Court consolidated the appeals *sua sponte* pursuant to Pa.R.A.P. 513.  Order, 3/23/22.

advocacy during the January 26, 2022 hearing.[3]  Appellant's Brief at 14-29.

Specifically, Appellant contends that the trial court removed Appellant as

J.O.'s GAL because Appellant argued that J.O. should be placed with R.T. after

R.T. moves back to Philadelphia.  *Id.* at 17-18, 20-27.  Appellant notes that

under the Juvenile Act, GAL is "'charged with representation of the legal

interests and the best interest[s] of the child at every stage of the

proceedings[,]' which includes advising 'the court of the child's wishes to the

extent that they can be ascertained and present to the court whatever

evidence exists to support the child's wishes.'"  *Id.* at 14 (quoting 42 Pa.C.S.

§ 6311(b), (b)(9)); *see also id.* at 17 (stating that "[t]he child's

representative must '[a]dvise the court of the child's wishes to the extent that

they can be ascertained and present to the court whatever evidence exists to

support the child's wishes'" (quoting Pa.R.J.C.P. 1154)).  Therefore, Appellant

concludes that the trial court erred in removing Appellant as GAL for

---

[3] Although Appellant presented a single question for review arguing that the trial court abused its discretion by removing Appellant as GAL for Children, Appellant divides its argument into two sections in its brief.  Specifically, Appellant claims: (1) Appellant had fulfilled its responsibilities as GAL for Children, and (2) the trial court's decision to vacate Appellant's appointment as GAL was not in the best interests of J.O.  While we appreciate Appellant's organization of its argument in a manner conducive to the instant case, we remind Appellant that Pa.R.A.P. 2119(a), requires, among other items, that the argument "be divided into as many parts as there are questions to be argued." Pa.R.A.P. 2119(a).  However, under the circumstances of this case, we decline to impose waiver.

advocating placement with R.T., which Appellant asserts was in J.O.'s best interest and consistent with J.O.'s clearly expressed wishes. *Id.* at 18, 20.[4]

Appellant further argues that the trial court violated Children's right to legal representation by vacating its appointment as GAL because Appellant had been advocating for Children's best interests and legal interests. *Id.* at 18-21, 29 n.14. Lastly, Appellant contends that vacating its appointment as GAL for J.O. was not in J.O.'s best interest. *Id.* at 27-29. Appellant asserts that because J.O. is bonded with R.T. and R.T. has consistently seen to J.O.'s care, it was in J.O.'s best interest for R.T. to remain the caregiver for J.O. *Id.*

In reviewing Appellant's claim, we are guided by the following principles:

> We review a trial court's decisions in a child dependency proceeding for an abuse of discretion. We must accept the facts as found by the trial court unless they are not supported by the record. It is our responsibility to ensure that the trial court has applied the appropriate legal principles to the record while still affording great weight to the court's fact-finding function, as the trial court is in the best position to observe and rule on the credibility of the parties and witnesses.

---

[4] Appellant also notes that the trial court did not afford Appellant an opportunity to develop its case that R.T. would be a suitable caregiver by interrupting Appellant's questioning of CUA case worker Mileihka Colon. *Id.* at 18, 25-26. To the extent that Appellant argues that the trial court improperly restricted Appellant's cross-examination of Ms. Colon, Appellant has not included this claim in its Rule 1925(b) statement or in the statement of questions presented in its brief. Therefore, it is waived. *See* Pa.R.A.P. 1925(b)(4)(vii) (stating that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived"), 2116(a) (stating that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby").

***In Interest of C.P.***, 155 A.3d 631, 633-34 (Pa. Super. 2017) (citations and quotation marks omitted).

Section 6311 of the Juvenile Act provides:

**(a) Appointment.**—When a proceeding, including a master's hearing, has been initiated alleging that the child is a dependent child under paragraph (1), (2), (3), (4) or (10) of the definition of "dependent child" in section 6302 (relating to definitions), the court shall appoint a guardian *ad litem* to represent the legal interests and the best interests of the child.  The guardian *ad litem* must be an attorney at law.

**(b) Powers and duties.**—The guardian *ad litem* shall be charged with representation of the legal interests and the best interests of the child at every stage of the proceedings and shall do all of the following:

(1) Meet with the child as soon as possible following appointment pursuant to section 6337 (relating to right to counsel) and on a regular basis thereafter in a manner appropriate to the child's age and maturity.

\* \* \*

(3) Participate in all proceedings, including hearings before masters, and administrative hearings and reviews to the degree necessary to adequately represent the child.

(4) Conduct such further investigation necessary to ascertain the facts.

(5) Interview potential witnesses, including the child's parents, caretakers and foster parents, examine and cross-examine witnesses and present witnesses and evidence necessary to protect the best interests of the child.

\* \* \*

(7) Make specific recommendations to the court relating to the appropriateness and safety of the child's placement and services necessary to address the child's needs and safety.

(8) Explain the proceedings to the child to the extent appropriate given the child's age, mental condition and emotional condition.

(9) Advise the court of the child's wishes to the extent that they can be ascertained and present to the court whatever evidence exists to support the child's wishes. When appropriate because of the age or mental and emotional condition of the child, determine to the fullest extent possible the wishes of the child and communicate this information to the court. . . .

42 Pa.C.S. § 6311(a)-(b); **see also** Pa.R.J.C.P. 1154 (the same).

Rule of Juvenile Court Procedure 1151 states:

**A. Guardian *ad litem* for child.** The court shall assign a guardian *ad litem* to represent the legal interests and the best interests of the child if a proceeding has been commenced pursuant to Rule 1200 alleging a child to be dependent who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the physical, mental or emotional health, or morals;

\* \* \*

**C. Counsel and Guardian *ad litem* for child.** If a child has legal counsel and a guardian *ad litem*, counsel shall represent the legal interests of the child and the guardian *ad litem* shall represent the best interests of the child.

Pa.R.J.C.P. 1151(A)(1), (C).

The Comment to Rule of Juvenile Court Procedure 1154 explains that:

"Legal interests" denotes that an attorney is to express the child's wishes to the court regardless of whether the attorney agrees with the child's recommendation. "Best interests" denotes that a guardian *ad litem* is to express what the guardian *ad litem* believes is best for the child's care, protection, safety, and wholesome physical and mental development regardless of whether the child agrees.

Pa.R.J.C.P. 1154 cmt.

- 11 -

A single attorney may serve as both GAL and the child's legal counsel so long as there is no conflict between the child's best interests and legal interests. *See In re J'K.M.*, 191 A.3d 907, 913 (Pa. Super. 2018) (citing 42 Pa.C.S. § 6311(a)). "[T]he GAL is to represent a child's legal interests by determining 'to the fullest extent possible,' a child's wishes, if those wishes are ascertainable." *Id.* (quoting 42 Pa.C.S. § 6311(b)(9)). However, "if a child's wishes conflict with the GAL's belief of the best interests of that child, the GAL has a conflict and the court may separate the representation by retaining the GAL to act solely as the child's attorney and appointing a new GAL." *C.P.*, 155 A.3d at 634 n.2 (citing Pa.R.J.C.P. 1151 cmt).; *see also J'K.M.*, 191 A.3d at 915.[5]

In *C.P.*, the trial court vacated an attorney's appointment as GAL in a dependency proceeding, but allowed the attorney to remain as the child's legal counsel. *C.P.*, 155 A.3d at 632. On appeal, this Court affirmed the trial court's ruling, as the child had been adjudicated dependent based on status offenses and Pa.R.J.C.P. 1151 did not require the appointment of a GAL under those circumstances. *Id.* at 634-35.

In *J'K.M.*, a single attorney served in the dual role of GAL and the child's legal counsel in a dependency proceeding. *J'K.M.*, 191 A.3d at 909. During a permanency review hearing, the attorney stated that the child wished to

---

[5] To the extent that 42 Pa.C.S. § 6311(b)(9) is inconsistent with the requirement that the court appoint a separate GAL and counsel for a child when there is a conflict between the child's best interests and legal interests, it has been suspended. *See* Pa.R.J.C.P. 1154, cmt; 1800(3).

return to the mother's home, but argued that it was in the child's best interests to remain in foster care. *Id.* The mother's counsel requested that the trial court appoint a separate GAL, and the trial court denied the request. *Id.* at 910. On appeal, this Court concluded that because there was a conflict between the child's legal interests and best interests, the child's counsel should have requested that the trial court appoint a separate GAL. *Id.* at 915. Therefore, the *J'K.M.* Court reversed the trial court's order and remanded for the appointment of a new, separate GAL while allowing the former GAL to continue to represent the child's legal interests as the child's counsel. *Id.* at 916.

Our Supreme Court has held that in a dependency proceeding, the trial court is not bound by Department of Public Welfare regulations, particularly those that restrict the placement of children to certified foster care homes. *In re Lowry*, 484 A.2d 383, 386-88 (Pa. 1984). In *Lowry*, the Court considered whether a trial court had authority under 42 Pa.C.S. § 6351 to order a dependent child to be placed with "an individual without the prior certification of the individual's home as an approved foster care home." *Id.* at 385. Our Supreme Court observed

> [i]n ordering a disposition under Section 6351, the court acts not in the role of adjudicator reviewing the action of an administrative agency, in which case, the regulations promulgated to bind that agency could not be ignored; rather the court acts pursuant to a separate discretionary role with the purpose of meeting the child's best interests.

*Id.* at 386.  The Court concluded that 42 Pa.C.S. § 6351(a)(2)(i) permits the trial court to place the child with anyone that the court finds to be qualified to receive and care for the child, "**without regard to whether the individual is as yet authorized by law, *i.e.*[,] as an approved foster care home, to receive and care for the child.**"  *Id.* at 387 (emphasis added).  The *Lowry* Court further explained that

> [i]n making any disposition pursuant to its authority under Section 6351, the court is guided by the overriding principle of acting "to provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this chapter."  42 Pa.C.S. § 6301(b)(1).  We, too, in construing the Juvenile Act, are directed by Section 6301 to observe the same stated purpose.  Accordingly, that result which will encourage, rather than discourage, action related to the best interests and protection of the child, is preferred.

*Id.* at 388; *see also In re Tameka M.*, 580 A.2d 750, 752 (Pa. 1990) (holding that "[t]he Juvenile Court maintains a continuing plenary jurisdiction in dependency cases under 42 Pa.C.S.[] § 6351 and has the power to review the circumstances of dependent juveniles and to question both the legal custodian, CYS, and the foster parents concerning the condition and the needs of the dependent child").

Here, as noted previously, the trial court vacated Appellant's appointment as GAL after concluding that Appellant had "lost perspective," failed to focus on J.O.'s best interests, and had "converted herself into an advocate for [R.T.] and not the child."  *See* N.T. at 37.

In its Rule 1925(a) opinion, the trial court explained:

The Rules of Juvenile Court Procedure outline the duties that the guardian *ad litem* shall perform pursuant to Pa.R.J.C.P. No. 1154. At the time of the last permanency review hearing on [January 26, 2022], [Appellant] objected to J.O.'s placement with the current caregiver and argued that it would be in the best interest of the Child to wait until R.T.'s return, wait for a home assessment of a home not in existence, and place J.O. with R.T. in a PLC[6] placement. This court concluded based on the testimony heard and arguments made that counsel was arguing zealously in favor of the former caregiver, who was not certified, was living in New York and had a tentative timeline to perhaps return to Philadelphia sometime in March. This court acknowledged that R.T. had done wonders for this Child in the past, however, this court reasoned that the course of action outlined by [Appellant] was not in J.O.'s best interest.

[Appellant's] allegation that vacating [its appointment] was done after the hearing was held and without [Appellant] being present in the courtroom is unfounded and against the above noted narrative noted in the notes of testimony of the permanency review hearing held on January 26, 2022.

Based upon the testimony and arguments heard at this hearing, this court reasoned, pursuant to its plenary powers and 42 Pa.C.S.[] § 6351 that the orders vacating [Appellant's] of these Children was best suited to the safety, protection, and physical, mental, and moral welfare of these Children. For the foregoing reasons, this court respectfully requests the permanency review orders issued by this court on January 26, 2022, be affirmed.

Trial Ct. Op. at 21-23 (footnotes and some citations omitted, and formatting altered).

Based on our review of the record, we conclude that the trial court abused its discretion by removing Appellant as GAL for J.O. *See C.P.*, 155 A.3d at 633-34.

_____

[6] Permanent legal custodian. *See In re H.V.*, 37 A.3d 588, 589 (Pa. Super. 2012); 42 Pa.C.S. § 6351(a)(2.1); 67 Pa.C.S. § 3102.

Accordingly, we hold that the trial court erred in removing Appellant as GAL based on its conclusion that Appellant failed to advocate for J.O.'s best interests. Although the trial court recognized that R.T. had been a good caregiver for J.O. in the past, the court concluded that placement with R.T. was not appropriate because DHS had not certified R.T. as a caregiver. Further, in light of R.T.'s lack of certification, the trial court concluded that Appellant was not advocating for J.O.'s best interests by arguing for his placement with R.T. As our Supreme Court explained in *Lowry*, a trial court is not bound by regulations regarding certification of foster care homes and has the authority to order a child placed with an uncertified caregiver when such placement is in the best interest of the child. *See Lowry*, 484 A.2d at 386-88. Therefore, we conclude that the trial court misapplied the law by concluding that Appellant was not advocating for J.O.'s best interests by arguing for placement with R.T., who was not a certified caregiver. *See id.* Further, although we recognize that the trial court has plenary jurisdiction in dependency matters, *see Tameka M.*, 580 A.2d at 752, we conclude that the trial court erred in removing Appellant as GAL based on its incorrect application of the best interests of the child standard to the facts of the case.[7] *See C.P.*, 155 A.3d at 633.

---

[7] We recognize that there are circumstances under which a court may remove a GAL for failing to advocate for the best interests of the child. Therefore, we emphasize that our conclusion with respect to Appellant as GAL is limited to the specific facts and circumstances of these cases.

- 16 -

Further, we conclude that the trial court erred in removing Appellant as GAL for advocating for J.O.'s legal interests. During the permanency review hearing, Ms. Colon testified that J.O. has a strong connection with R.T. and wishes to remain in R.T.'s custody. *See* N.T. at 14, 33. Because Appellant was serving in the dual roles of GAL and the child's legal counsel, Appellant was obligated to represent J.O.'s legal interests "by determining 'to the fullest extent possible,' [his] wishes, if those wishes are ascertainable." *See J'K.M.*, 191 A.3d at 913 (quoting 42 Pa.C.S. § 6311(b)(9); *see also* Pa.R.J.C.P. 1154(9)). Here, Appellant informed the trial court of J.O.'s desire to be placed back in R.T.'s care. The trial court did not address whether there was a conflict between J.O.'s best interests and legal interests. If the trial court had concluded that such a conflict existed, the appropriate action would have been to appoint a separate GAL to represent J.O.'s best interests and allow Appellant to remain as J.O.'s legal counsel and advocate for J.O.'s wishes. *See J'K.M.*, 191 A.3d at 915-16; *see also C.P.*, 155 A.3d at 634 n.2. For the foregoing reasons, we reverse the trial court's order removing Appellant as GAL for J.O. *See C.P.*, 155 A.3d at 633.

Lastly, we discern no basis in the record for the trial court to remove Appellant as GAL for K.L. The trial court did not specifically discuss its decision to remove Appellant as GAL for K.L. Instead, the trial court's analysis focused entirely on Appellant's purported loss of perspective with respect to Appellant's representation of J.O. *See* Trial Ct. Op. at 21-23. There was no indication in the record that Appellant failed to advocate for K.L.'s best

interests and legal interests. *See* N.T. at 3-13. It appears that the trial court concluded, without support in the record, that Appellant could not serve as GAL for K.L. based on Appellant's advocacy for J.O., accordingly, we are constrained to reverse the trial court's order removing Appellant as GAL for K.L. for the reasons stated above. *See C.P.*, 155 A.3d at 633.

Having concluded that the trial court abused its discretion in vacating Appellant's appointment as GAL for Children, we need not reach Appellant's due process claim.[8]

For these reasons, we reverse the trial court's January 26, 2022, orders that vacated Appellant's appointment as GAL for the Children, K.L. and J.O. We emphasize that the only orders before this Court on appeal concern the trial court's removal of Appellant as GAL for Children. All other orders and subject matter pertinent to the instant cases are not included in this decision and remain in status quo.

---

[8] Finally, we observe that Appellant's brief does not contain a certification of compliance with the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania ("Public Access Policy"). *See* Pa.R.A.P. 127(A); 2111(a)(12). Appellant has also included exhibits that contain copies of the transcript from the January 26, 2022 hearing and the trial court's orders, none of which have not been redacted to remove Children's names and dates of birth. *See* Public Access Policy § 7.0(A)(5), (D). Because the record of these Children's Fast Track matters has already been sealed, this Court does not have to order Appellant's brief be sealed. *See id.* at § 7.0(F) (providing that a court may *sua sponte* order a document that violates the Public Access Policy be sealed). We decline to impose sanctions here, but caution Appellant to comply with the Public Access Policy in the future.

Orders vacating GAL appointment reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/22/2022